[Civil No. 1765.  Filed May 5, 1920.]

[189 Pac. 625.]

# S. H. KRESS & COMPANY, a Corporation, Appellant, v. H. T. EVANS, Appellee.

1. EVIDENCE—PAROL EVIDENCE INADMISSIBLE TO VARY WRITTEN CONTRACT.—When parties have put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement was reduced to writing, and all oral testimony of a previous colloquium between the parties or of conversations or declarations at the time it is completed, or afterwards, is rejected, in the absence of fraud, accident or mistake.

2. EVIDENCE—CONTRACT OF EMPLOYMENT IN WRITING NOT TO BE VARIED BY PAROL.—In an action by one employed as manager of a chain store to recover for his services, *held* that the terms of the employment were complete in an instrument designated "Arrangement Sheet," which could not be varied by evidence of a parol contract.

3. EVIDENCE—CONTEMPORANEOUS PAROL AGREEMENT RECEIVED IN EVIDENCE WHERE INSTRUMENT IS INCOMPLETE.—Evidence of a prior or contemporaneous parol agreement or understanding is frequently received in evidence, where it is consistent with the writing in question, and it is apparent that the instrument was not intended as a complete embodiment of the undertaking.

4. CONTRACTS—NO COMPLAINT CAN BE MADE AS TO HARSHNESS OF TERMS.—Parties have the legal right to make such contracts as they desire to make, provided only that the contract shall not be for an illegal purpose or against public policy, and a party to a contract cannot complain of the harshness of its terms.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  R. C. Stanford, Judge. Reversed and new trial ordered.

## STATEMENT OF FACTS.

The appellee, hereinafter referred to as plaintiff, sued the appellant, hereinafter referred to as de-

---

2. On the general rule that parol evidence is not admissible to vary, add to or alter a written contract, see note in 17 **L. R. A.** 270.

fendant, to recover a balance of $606, alleged to be due him under an oral contract of employment with the defendant as manager of the defendant's store at Phoenix, Arizona. By way of answer to plaintiff's complaint, the defendant pleaded a signed instrument entitled "Arrangement Sheet" and alleged that this arrangement sheet was the contract of employment, and the only contract made between the plaintiff and the defendant. The instrument, omitting dates and other immaterial matter, is as follows:

" . . . In consideration of your continuing me in charge of your store in Phoenix, Ariz., I hereby agree to give my whole time and attention to your business, obey all your instructions, honestly discharge my duties to the best of my ability, and safely guard your property and interests, delivering the same to you immediately upon your demand; my position to be a weekly employment under the conditions herein set forth, at a salary of eighteen ($18.00) dollars per week, payable as arranged. . . . If I am retained in said position continuously until December 31, 1917 (my retention voluntarily by you until said date being an express condition precedent), I am to receive on or about March 1st of the following year that share of the net profits derived from said store to which you in your judgment may deem me entitled by reason of my individual efficiency in managing and developing the business of said store and increasing its net earnings over and above the usual normal sales and profit increases which come as a natural consequence to all progressive business, less what I have drawn as my said salary, after the net profits have been determined at the regular annual inventory, and the usual settlement made according to your custom, but one of the conditions precedent to any such payment is that I so conduct said store that it will at least produce the average, regular and correct merchandise profit earned by other S. H. Kress & Co. stores of similar class, and having equal freight location. . . . My said employment may be terminated by you at any time without notice to me, except that in event of such termination without notice I am

to be credited or receive an amount equal to my said weekly salary for three weeks in advance, and if terminated by you, or if I leave your service prior to the end of said year, I shall not as aforesaid, participate in any net profits. If I desire to leave your employment, I will give you at least three weeks' written notice of such intention, and before departure I will not mention my leaving to the help or needlessly to outsiders. . . . This constitutes the sole arrangement between us, the consideration being one dollar, and other good and valuable considerations mutually exchanged, and contains all the terms and conditions of my said employment. I understand that by continuing me in your employment you accept the above arrangement. Before signing this arrangement I have read same carefully and understand it fully.

"[Signed]    H. T. EVANS.

"Witness, C. W. KRESS."

The plaintiff filed a reply to the defendant's answer in which he admits that he executed the instrument entitled "Arrangement Sheet," pleaded by the defendant "but denies that said statement constituted the sole and only arrangement made between the plaintiff and the defendant with respect to his employment for the year 1917, and in that behalf alleges that for a number of years prior to the year 1917 the plaintiff had been in the employ of the defendant in the capacity of manager of its various stores, and that for the year 1916 the compensation paid to the plaintiff by the defendant for the plaintiff's services was an amount equivalent to one and one-half per cent of the gross business done by the Phoenix store for said year; that prior to the signing of the arrangement sheet set forth in defendant's answer, and as the sole inducement thereto, the defendant stated to the plaintiff that his compensation would be measured by the same percentage of the gross business done by the said Phoenix store as was paid to him during the year 1916; that at the time and prior to the signing

of the said arrangement sheet it was thoroughly understood and agreed between the parties that said sheet was to be taken and considered as a letter of instructions to the plaintiff and as a measure of the drawing salary which plaintiff would be entitled to during the year; that the plaintiff's salary and compensation was to be measured by the following clause or provision of said arrangement sheet, to wit: 'If I am retained in said position continuously until December 31, 1917 (my retention voluntarily by you until said date being an express condition precedent), I am to receive on or about March 1st of following year that share of the net profits derived from said store for said year to which you in your judgment may deem me entitled by reason of my individual efficiency in managing and developing the business of said store and increasing its net earnings over and above the usual normal sales and profit increases which come as a natural consequence to all progressive businesses, less what I have drawn as my said salary, after the said net profits have been determined at the regular inventory, and the usual settlement made according to your custom, but one of the conditions precedent of any such payment is that I so conduct said store that it will at least produce the average, regular and correct merchandise profit earned by other S. H. Kress & Co. stores of similar class, and having equal freight location.' "

The case was tried to a jury, which returned a verdict for plaintiff in the sum of $606, followed by judgment. From the judgment and order denying a new trial, the defendant appeals.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Messrs. Hayes & Allee, for Appellee.

BAKER, J. (After Stating the Facts as Above.)—
The appeal in this case presents a contest over the
application of the parol evidence rule. During the
course of the trial the court, over the objections of
the defendant, admitted testimony on the part of the
plaintiff to the effect that plaintiff met Mr. C. W.
Kress, a member of the defendant company, in his
room at the Adams Hotel in the month of February,
1917, and there discussed the business being done by
the defendant's store at Phoenix. Mr. Kress pro-
duced the arrangement sheet for the signature of
plaintiff. Plaintiff read the instrument, and stated
that the arrangement sheet did not specify what his
percentage for the year 1917 was to be. Whereupon,
Mr. Kress replied: "Oh, that will be just the same as
it was last year; you can trust S. H. Kress & Co. for
that." Whereupon, plaintiff said: "All right, with
that consideration, I will sign it." Further testi-
mony was admitted tending to prove that defendant's
store, under plaintiff's management in the year 1917,
and prior to the conversation referred to, had done
some $80,000 worth of business. It was also testified
that the plaintiff was paid $1,836, being one and one-
half per cent of the business of $125,000, done by the
store for the year 1916. The defendant contends
that proof of the oral contract was inadmissible be-
cause it tended to alter and change the terms of the
written contract between the parties. The plaintiff
contends that the oral contract was collateral and in-
dependent of the written contract, and constituted
the inducement for the execution of the written con-
tract, and, being such, was not violative of the parol
evidence rule.

We are not favorably impressed with the argument
advanced by the plaintiff that the arrangement sheet
was of secondary importance and bearing, and was
intended primarily as a letter of instruction to the

plaintiff as manager of defendant's store, and as further confining and limiting the amount of money which the plaintiff would be entitled to draw weekly on account of his employment with the defendant. A close analysis of the instrument will show that it has every essential of a contract upon its face—parties, time, consideration, subject matter and mutual assent.

The law is very firmly settled that when parties have put their engagements into writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of the undertaking was reduced to writing, and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time it is completed, or afterwards, is rejected.

Mr. Wigmore, in his admirable work on Evidence (volume 4, page 3409), puts the proposition thus:

"When a legal act is reduced into a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their acts."

The same author, speaking further to the subject and stating the rule to determine whether the matter being debated is or is not already in legal effect, written into the memorial, says (page 3426):

"The inquiry is whether the writing was intended to cover a certain subject of negotiation; for, if it was not, then the writing does not embody the transaction on that subject; and one of the circumstances of decision will be whether the one subject is so associated with the others that they are in effect 'parts' of the same transaction, and therefore, if reduced to writing at all, they must be governed by the same writing."

The subject matter in the written contract and the oral contract is the same, to wit, the employment of

the plaintiff by the defendant as manager of the defendant's store at Phoenix. The time is the same in both contracts; the parties are the same, and the consideration is dealt with and considered in each contract. The written contract provides that plaintiff should receive $18 per week for his services, and further provides that if he was retained in his position as manager of the store continuously until December 31, 1917 (his retention being an express condition precedent), he was to receive, on or about March 1st of the following year, that part of the net profits derived from said store to which he, in the defendant's judgment, might be entitled by reason of his individual efficiency in managing and developing the business of the store and increasing its net earnings over and above the usual normal sales. The oral contract purports to fix plaintiff's compensation absolute at the same rate he was paid for like services in the year 1916, to wit, one and one-half per cent of $80,000, the estimated amount of the business done by the Phoenix store in the year 1917. It is plain to be seen that the elements of the subject matter touching the plaintiff's employment dealt with in both of the contracts are so associated and correlated as to be, in effect, parts of the same transaction, and hence, under the rule laid down by Mr. Wigmore, it must be presumed as a matter of law that the parties intended to incorporate all their negotiations relative to the subject matter into one memorial or contract, which must be held to be evidenced by the written contract. It follows that the oral contract cannot be held to constitute the consideration or inducement for entering into the written contract; nor can the oral contract be held to be collateral to the written contract.

We shall not discuss the authorities upon which the plaintiff relies, except to state that they are cases where the written contract was incomplete, or where

the oral contract was consistent with the written contract, and not contradictory thereof. It is true that evidence of a prior or contemporaneous parol agreement or understanding is frequently received where it is consistent with the writing in question, and it is apparent that the instrument was not intended as a complete embodiment of the undertaking. 5 Chamberlayne on Modern Law of Evidence, § 3553, and cases cited in note. In the case at bar, however, the written contract in our opinion, is clear, unequivocal, definite and complete.

The plaintiff could not be heard to testify to the effect that he was to receive compensation for his services at the rate of one and one-half per cent on a basis of $80,000, the estimated amount of the sales in the store for the year 1917, because the testimony would tend directly to contradict the express stipulation in the written contract that defendant might discharge plaintiff from his employment at any time prior to December 31, 1917, in which event he was not to participate at all in the profits arising from the sales. The undisputed evidence shows as a matter of fact that plaintiff was discharged as manager of the defendant's store in October, 1917.

It is well established that in the absence of fraud, accident or mistake of fact, parol evidence is inadmissible to vary the terms of a written agreement. 17 Cyc. 596. Neither fraud nor mistake of fact is claimed by the plaintiff. Indeed, we do not see how any such contention could be made in view of the fact that the writing itself shows upon its face that it was freely signed with admitted knowledge of its entire contents and meaning.

Some complaint is made of the harshness of the terms of the written contract, but parties have the legal right to make such contracts as they desire to make, provided only that the contract shall not be for illegal purposes or against public policy.

It is our conclusion that the trial court erred in admitting the evidence touching the oral contract, and for that reason the judgment will be reversed and a new trial ordered.

CUNNINGHAM, C. J., and ROSS, J., concur.