331 P.2d 597

**STATE of Arizona, Appellee,**

v.

**James VAN BOGART, Appellant.**

No. 1119.

Supreme Court of Arizona.

Nov. 12, 1958.

Amil J. Ajamie, Phoenix, for appellant.

Robert Morrison, Atty. Gen., Charles C. Stidham, County Atty., Phoenix, Douglas H. Standage, Deputy County Atty., Mesa, for the State.

PHELPS, Justice.

Defendant James Van Bogart was convicted by a jury of the crime of first degree arson. From the judgment and sentence imposed thereon he appeals to this court.

The facts are that defendant was the owner of a home on the desert some 12 or 13 miles east of Mesa. Defendant is a married man but was not living with his wife at the time his home was destroyed by fire. A few days before the fire occurred defendant employed one Karlene L. Glascow, a married woman, as a housekeeper. Mrs. Glascow and her small child accompanied him to his home and worked as such housekeeper for about one week when defendant told her he could get carpenter work at Lakeside and was going there to work. Mrs. Glascow agreed to go to Lakeside with him in the capacity of a housekeeper. Pursuant thereto they went to Lakeside.

A few days later, on Sunday May 27, 1956 about nine o'clock a. m. defendant informed Mrs. Glascow that he had to take a trip to Mesa and they left for Mesa about one o'clock p. m. that day. Mrs. Glascow drove the car at the request of defendant. They arrived at Florence Junction around 6:30 p. m. and had dinner there. They left Florence Junction at approximately 8:30 p. m. One reason for remaining there so long, according to the testimony of Mrs. Glascow, was because defendant told her he " * * * wanted to get to his house a little bit later, when it was dark, as he told me he didn't want the neighbors to know all his business."

According to Mrs. Glascow's testimony they arrived in the neighborhood of defendant's home around nine to nine-thirty p. m.; that when they arrived at the road leading north from Highway 60 to defendant's house he instructed her to continue to drive west on Highway 60 until she reached the second road from the road which led north to his house. She did this and drove north on said road until she reached a spot approximately opposite defendant's house where she stopped and headed her car east; that after a little while defendant got out of the car and went to his home and in about 30 minutes he returned to the car carrying a tub full of articles including a typewriter.

After he brought the tub back he waited until the lights of the church across the road from his home went out, and he went back to the house. He was gone "not very long" she said when she heard a sound coming from the house " * * * like a great big whish, and I saw flames coming from the top of the house, and two or three or four minutes later Mr. Bogart ran back to the car." When asked if he was running or walking she replied: "No, he was running." She was asked if defendant said anything to her at the time and she replied: "He told me, he said, 'watch the fire, because there is $3,500 coming to life.'"

They remained there until the fire was practically out. During the fire she heard a sound like metal scraping on the ground and defendant explained it by saying he had removed the right rear tire off of the car in the carport because he wanted that to burn so he could collect the insurance. After the fire they proceeded on north on the road where they were parked and circled around through the desert until they again reached Highway 60. They stopped at a service station and got gas and then returned to Lakeside.

On June 1 Mrs. Glascow drove defendant's 1947 Pontiac to Phoenix where she met her mother and they drove on to Los Angeles. Defendant called upon her at her home on July 3 and offered her a $500 bribe to assist him in establishing an alibi in the event he should be prosecuted. On July 6 she received a letter from him bear-

ing date, San Diego, California, July 5, 1956, in which he outlined the testimony she should give to corroborate other witnesses whom he stated would testify that she and he were in Show Low at the Wagon Wheel show at 9:30 p. m. on May 27, and that they returned to their cabin after midnight that night.

On the same night that defendant called at her home Mrs. Glascow reported these matters to a Mr. James Hall in Phoenix. She later came to Mesa, Arizona and swore to a complaint against defendant charging him with first degree arson. After preliminary hearing on September 15, 1956 defendant was bound over to the superior court and bond fixed at $1,500 which defendant made. The case was set for trial on November 28, 1956. The case was duly called for trial on the above date. Both counsel for the State and defendant were present but the defendant failed to appear. A bench warrant was thereupon issued for his arrest and the bond ordered forfeited. The records show by return of this bench warrant that it was served on defendant "at the county jail", September 19, 1957. This was ten months after its issuance. The case was finally set for trial on November 13, 1957 and came up for trial on that date.

After twenty-four men had been called into the jury box for voir dire examination touching upon their qualifications to sit as jurors in the case, the defendant began to interrupt the proceedings by inquiring "what's going on here?" and stating that he was being railroaded and that he would not be quiet. This conduct continued throughout the voir dire examination of the jury by the court and until defendant was gagged by direction of the court after he had been told the court would have to gag him if he didn't keep quiet, which the court stated he did not want to do and defendant told them to put the gag on him, he wanted to be gagged; he would like a picture of it. He was not going to be framed, etc. When defendant first began his disturbance the court called both counsel to the bench and asked Mr. Gibson who had represented defendant for over a year, what was wrong and was informed by Mr. Gibson that defendant didn't want to go to trial; he is going to create a scene and that he didn't want Gibson to represent him at the trial.

The court permitted defendant to continue to disturb the proceedings until the voir dire examination of the jury was concluded, then ordered him gagged. Later he told defendant he would permit him to personally conduct his own defense but would permit Mr. Gibson to sit by him and advise him concerning anything with which he was not familiar. Defendant was kept gagged during the time the twelve jurors were sworn and the reading of the information, after which the gag was removed and

defendant was permitted to represent himself throughout the trial.

Defendant has first assigned as error the refusal of the trial court to permit defendant to conduct his own defense until it was too late for him to empanel his jury, and forcing defendant to accept the services of an attorney he did not want.

■■ There can be no doubt that a defendant is entitled to defend himself under the provisions of the Constitution if he so desires. Defendant did defend himself in the instant case, although Mr. Gibson was directed by the court to advise him if he desired it. The record discloses no instance in which Mr. Gibson imposed his services upon defendant but remained silent throughout the trial except upon request of defendant, he presented his motion for an instructed verdict at the close of the State's case. The record discloses that the jurors were thoroughly examined upon all matters that could possibly affect their qualifications to sit as a juror in the case. There is no complaint made by defendant that any one of the jurors was not qualified to sit as a fair and impartial juror in the case or that he would have stricken other jurors than those stricken by attorney Gibson.

Although it was error not to permit defendant to interrogate jurors concerning their qualifications it was not prejudicial error, and if his interrogation of witnesses is any criteria of his ability to select a jury, it would appear that he knew much more about their qualifications to serve as fair and impartial jurors from the examination made by the court and Mr. Gibson than he would have known following his own examination of them. Cf. Burgunder v. State, 55 Ariz. 411, 103 P.2d 256.

Defendant's second assignment of error is to the effect that the court erred in gagging defendant for the reason that it tended to bring defendant into disrepute with the jury prejudicing defendant's opportunity for a fair trial.

■■ While we concede that the measure employed by the court was drastic, yet, it is not only the right but the duty of a presiding judge to maintain order and decorum in the courtroom while the court is in session. The failure to do so would quickly bring a court into disrepute to the extent that it could neither demand nor command the respect of the public. The methods employed by the court to maintain order and dignity in the courtroom are commensurate with the necessities of each case. The defendant was clearly in contempt of court but punishment for his misconduct by subsequent fine or imprisonment was wholly inadequate to cope with the situation. A trial was in progress in which defendant was charged with a felony. The court was in the process of empanelling a jury. The defendant, by his conduct, made it impossible to continue. The fact

that defendant may have believed his constitutional right to defend himself at the trial was being violated did not justify such misconduct in the courtroom. If his constitutional rights were violated he had the right of appeal. Our position is fully sustained by the case of People v. Merkouris, 46 Cal.2d 540, 297 P.2d 999.

The third and last assignment of error is based upon the court's failure to direct a verdict at the close of the State's case based upon the claim that the corpus delicti had not been established for the reason that there was no evidence except the admissions of defendant that tended to rebut the presumption that the fire was the result of natural causes. The motion made by Mr. Gibson was not based on the above ground but upon the ground that there had been no evidence adduced corroborating the testimony of an accomplice. Of course, there was no evidence that Mrs. Glascow was an accomplice. She stated she had no intimation that there would be a fire until Mr. Bogart came running to the car after the fire started, and said "watch the fire, because there is $3,500 coming to life."

■■■ We do not think there is any merit whatever to the assignment as stated. We held in State v. Hernandez, 83 Ariz. 279, 320 P.2d 467, 469, that the correct rule on

" * * * the foundational proof by independent evidence is adequate for the purpose of allowing the use of confession or incriminating statements (of the defendant) if it is sufficient, assuming it is true, to warrant a reasonable inference that the crime charged was actually committed by some person."

The circumstantial evidence in the instant case we believe, justified the trial court in holding, in effect, that the above test had been fully met. The fact that defendant requested Mrs. Glascow to drive him to his home east of Mesa; that he waited at Florence Junction for two hours in order not to arrive at his home until after dark so his neighbors wouldn't know too much about his business; that he directed her not to drive up the church road to his house but to go on two roads beyond it and to park the car there approximately opposite his house; that he went alone to the house and brought back a tub full of articles including a typewriter; that he then waited at the car until the lights in the church opposite his house went out before he returned to his house; that soon after he had gone back to the house after bringing the tub, and that in a few minutes thereafter Mrs. Glascow heard a sound like a "whish" and immediately saw flames shoot out of the top of the house, together with the return of defendant to the car in a run within two, three or four minutes after the fire started, and that after waiting until the fire was out they drove back to Lakeside that night considered alone, we

believe amply established the corpus de-licti and that the court was justified in submitting the case to the jury. Circumstantial evidence is competent to meet the test laid down in State v. Hernandez, supra. See, also State v. Romo, 66 Ariz. 174, 185 P.2d 757.

 Further proof amply justified the verdict of the jury. In fact defendant called Mrs. Glascow as his own witness and had her again testify to every material fact to which she had testified as a witness for the State. This included the offer of a $500 bribe to not testify against him and the letter received in Los Angeles by Mrs. Glascow in an envelope stamped San Diego, addressed to her in defendant's handwriting with his name and a Mesa, Arizona address written in the upper left-hand corner of the envelope. In the letter he stated to her what he wanted her to swear in support of an alibi, and stated that other witnesses in Show Low, Arizona would testify to the same thing. No one other than defendant could have had knowledge of the contents of the letter and no objection was made by defendant either to said letter or the attempted bribe when offered in evidence by the State. Neither was there an objection by defendant to Mrs. Glascow's testimony that when defendant came running back to the car after the fire and told her "watch the fire, because there is $3,500

coming to life." We find no prejudicial error in the record.

Judgment affirmed.

UDALL, C. J., and WINDES, STRUCKMEYER and JOHNSON, JJ., concur.