381 P.2d 773

**A. W. KOMAREK and Edith Komarek, husband and wife, Appellants,**

v.

**F. P. COLE, T. A. Blanton, Olive L. Hall as Executrix and Elmer E. Yoeman as Executor of the Estate of Irving F. Hall, Deceased, W. N. Damron and James L. Vease, Appellees.**

**No. 7016.**

Supreme Court of Arizona.

In Division.

May 22, 1963.

Rehearing Denied June 11, 1963.

Udall & Udall, Tucson, for appellants.

Cusick, Watkins & Frey, Tucson, for appellees.

FRED J. HYDER, Judge of Superior Court.

The defendant Komarek, appellant herein (hereafter called Komarek), owned certain oil leases in the State of Texas. During the first six months of 1956 certain oral negotiations were conducted between Komarek and plaintiff Cole culminating in an assignment on August 10, 1956, by Komarek of an undivided one-eighth interest in said oil leases to each of the plaintiffs Cole, Blanton, Hall and Damron. Komarek retained the remaining one-half interest in said leases. This transaction will hereinafter be referred to as "Deal No. 1." On September 5, 1956, in Tucson, Arizona, a meeting was had between Komarek and all Deal No. 1 plaintiffs; and a written agreement entitled, "Operating Agreement" was read and executed by all parties, after which each of Deal No. 1 plaintiffs issued to Komarek an individual check for $5,000.00 for a total of $20,000.00.

On September 17, 1956, Komarek assigned an undivided one-eighth interest in certain other oil leases to each of the plaintiffs Cole, Blanton, Hall and Vease. Komarek retained the remaining one-half interest in these oil leases, and on September 17, 1956, these plaintiffs and Komarek executed an Operating Agreement identical to the Operating Agreement in Deal No. 1. This transaction will hereafter be referred to as "Deal No. 2." Subsequent to the execution of the Operating Agreement in Deal No. 2, each of Deal No. 2 plaintiffs issued a check to Komarek for $5,000.00 for a total of $20,000.00.

Under the agreements an oil well was to be drilled under Deal No. 1, and another under Deal No. 2. The Operating Agreements, identical in form, provided among other things that an exploratory oil well would be drilled on the block of leases attached to the Operating Agreement and that the operator, Komarek, should bill the non-operators, the plaintiffs, for their respective shares of expenses.

The following are the pertinent identical provisions of the Operating Agreements:

> "That Operator and Non-Operators *are the joint owners* of certain oil and gas mining leases, which leases are identified and attached to this operating agreement and marked Exhibits 1, 2, 3,

4, and 5, and each Exhibit shows the interest that each party owns in and to each separate lease.

"That in connection with the operation and development of each of said leases, Operator and Non-Operator mutually agree each with the other, as follows:

"That there shall be drilled on the block of leases attached hereto an exploratory oil well and the location of drilling site shall be selected by the Operator, and the Operator shall have the sole operation of each lease and is hereby appointed the Operator thereof, and shall have supervision and control of the development and operation of said leases, including the drilling of oil wells thereon, and Operator shall perform all work in a diligent and workmanlike manner, and shall use the methods in developing and operating said leases as are used by an ordinarily prudent operator in said field, and shall conform and comply with the laws, orders, rules and regulations of all duly and legally constituted governmental regulatory bodies, and shall promptly pay all bills for labor performed or materials furnished in the operation of said leases, and shall at all times keep said leases free and clear of liens and encumbrances, and shall keep all account and records covering the expenses incurred, *and shall bill*

*the Non-Operators for their respective shares.*

"(2) If, at any time, Operator does not operate said premises in a good and workmanlike manner and in accordance with the common customs and practices in the area where said property is located and in full compliance with the terms and covenants contained in this agreement, then the non-operating parties to this agreement, for such cause, shall have the right of cancellation of this agreement upon thirty (30) days' notice in writing to the Operator.

"(3) *Operator shall charge to the joint account of Operator and Non-Operators (which joint account shall be borne by the parties hereto in proportion to the interest owned by each in said leases) all costs and expenses incurred in connection with the operation and further development of said lease or leases and production therefrom, and shall, as soon as practicable after the 10th of each month mail to Non-Operators a statement showing in detail all expenses incurred in connection with the operation and development of said leases during the preceding calendar month; said statement shall include all sums expended in connection with the development and operation of said leases, and Non-Operators agree to pay to Operator by*

*the 20th of the month following receipt of such statement, their respective proportionate part of said costs and expenses.* Any exceptions to the statement as rendered by the Operator, must be made by Non-Operators within thirty (30) days from the receipt thereof.

\* \* \* \* \* \*

"(5) Non-Operators shall pay in addition to the ratable share of the actual cost of the operation and development of said leases, a reasonable charge as to each lease for the supervision, overhead, bookkeeping, car expense, and any other reasonable charge which is ordinarily included in overhead expenses.

\* \* \* \* \* \*

"(8) The purposed [sic] of this agreement is to fix clearly the liability of the parties (the joint owners of said leases) in respect to the operation thereof, and Operator shall have the exclusive management and control of the development and operation of said leases, but Non-Operators shall have reasonable access to the books and records as to the leases themselves, and in no event shall the Non-Operators be liable for any expenses in the operation, development and maintenance of said leases in excess of their ratable proportion.

\* \* \* \* \* \*

"(10) Operator shall open an account in the Wichita National Bank, Wichita Falls, Texas, known as a drilling account which shall be maintained for the expenses incurred in the drilling of wells on the property shown by the Exhibits annexed hereto, and Operator shall have the right, and at his sole discretion, to drill well or wells on any of the leases hereto annexed and shown in the Exhibits attached hereto, and at such locations that he may select on any of said leases. However, *before drilling such well or wells, he shall notify in writing the parties interested in said lease upon which said well is to be located and drilled, ten (10) days prior to the actual commencement of the drilling of said well, and shall give to said interested parties the approximate cost of drilling of said well or wells, and each party shall pay to Operator within ten (10) days thereafter, and before the commencement of said well, his approximate share of the expenses to be incurred in the drilling of said well, which money shall be deposited in the drilling account in the Wichita National Bank.* In the event that the expense of drilling of said well exceeds the approximate cost made by said Operator, then in such event each interested party shall pay his or its pro rata part of such additional expense. In the event the cost of said

well is less than the approximate cost given by Operator to Non-Operators, then in such event each party shall be reimbursed as to their pro rata part of the money paid by them. It shall be solely at the judgment and discretion of the Operator as to when any well or wells are to be drilled and as to the location of same. In the event that Non-Operators or any of them do not pay to Operator within ten (10) days after notified by him their proportionate part of the approximate cost of drilling of a well or wells on any of the oil and gas leasses [sic] attached hereto and designated as Exhibits, then the Operator shall have the right to proceed with the drilling of said well or wells, and the Non-Operators hereby agree to pay double the amount of such cost of the drilling of said well, if said well results in a producer, and Operator shall have the right to collect the proceeds of the oil runs from the Non-Operator or Non-Operators not putting in their part of the pro rata expense, until the cost of said well or wells has been paid.

\* \* \* \* \* \*

"(12) This agreement shall continue in full force and effect for the life of the oil and gas leases above described. \* \* \*." (Emphasis supplied.)

After both Deal No. 1 and Deal No. 2 were consummated by the parties and the Operating Agreements executed, Komarek began drilling an oil well on land covered by Deal No. 1 oil leases and demanded of Deal No. 1 plaintiffs that each make a pro rata payment for drilling costs. This oil well resulted in a dry hole. A dry hole report was made by the drilling contractor on November 16, 1956.

Thereafter on February 15, 1957, Deal No. 2 plaintiffs gave written notice to cancel Deal No. 2 Operating Agreement and filed a complaint for the return of $5,000.00 to each. Deal No. 1 plaintiffs sued, (joining Deal No. 2 plaintiffs in an amended complaint) claiming that they had paid more than their share of the drilling costs on Deal No. 1 and were entitled to a return of the excess. The actual drilling costs incurred in Deal No. 1 were $17,192.80. Komarek counterclaimed against Deal No. 1 plaintiffs, demanding that they each pay one-eighth of the drilling costs, and counterclaimed for damages against Deal No. 2 plaintiffs, claiming that they had wrongfully terminated their Operating Agreement. No hole was drilled on Deal No. 2 property.

After a trial without a jury, the court entered judgment finding for defendant Komarek with regard to Deal No. 1 and finding for plaintiffs with regard to Deal No. 2. Judgment was entered accordingly, and Komarek appeals from that portion of the judgment finding for plaintiffs with regard to Deal No. 2. Deal No. 1 plaintiffs cross-appeal on the finding and judgment of the court with respect to Deal No. 1.

All plaintiffs took the position their initial $5,000.00 each was to cover drilling and the evidence shows that at a meeting where all plaintiffs were present Komarek maintained that the $5,000.00 each had paid was for their shares in the leases, and the operating agreements provided each should pay an additional pro rata amount for drilling; that plaintiffs told Komarek to continue drilling and he did so. Komarek maintained this conduct on plaintiffs' part in effect estopped them from further claiming they were not obligated to pay drilling costs over and above the initial $5,000.00 each contributed.

Komarek complains that the court admitted parol testimony to change the terms of the written agreements over timely objection thereto, which formed the only basis for the judgment for Deal Number 2 plaintiffs. This consisted of testimony by all of the plaintiffs that it was their intent that the $5,000.00 initially given to defendant Komarek was to be used solely and only for the drilling of the wells.

 The authorities are legion that parol evidence may be used to explain an ambiguous contract, but in the absence of fraud or mistake it may not be used to change, alter or vary the express terms in a written contract. McNeil v. Attaway, 87 Ariz. 103, 348 P.2d 301 (1959); Cashion v. Bank of Arizona, 30 Ariz. 172, 245 P. 360 (1926); S. H. Kress & Co. v. Evans, 21

Ariz. 442, 189 P. 625 (1920). In this case, no issue of fraud or mistake was raised and the agreements were plain and unambiguous. It is perfectly clear from a reading of the Operating Agreement in both deals that the drilling expenses were to be borne by the parties in proportion to the interests owned by each in the attached leases, i. e. one-eighth by each plaintiff. The court erred in admitting parol evidence to the contrary, the effect of which could only prejudice Komarek.

Komarek complied with all material portions of the Operating Agreement. He gave each Deal No. 1 investor an estimate of the drilling costs on the first well. This was done in a letter to each of the Deal No. 1 plaintiffs, setting forth the estimate of the drilling costs and demanding payment of their proportionate shares.

Deal No. 2 plaintiffs attempted to cancel the Operating Agreement pursuant to the following clause which is contained therein:

"(2) If, at any time, Operator does not operate said premises in a good and workmanlike manner and in accordance with the common customs and practices in the area where said property is located and in full compliance with the terms and covenants contained in this agreement, then the non-operating parties to this agreement, for such cause, shall have the right of cancellation of this agreement upon thirty (30)

days' notice in writing to the Operator."

The basis of their claim of breach is that their payment of $5,000.00 each were to be used for drilling. Their only supporting evidence is that parol testimony which we have pointed out was inadmissible. Hence there was no competent evidence adduced justifying cancellation of Deal No. 2 Operating Agreement. Nor did Komarek adduce any evidence of damages against Deal No. 2 plaintiffs, as alleged in Count Two of his counterclaim. This being so, the attempted cancellation was ineffectual and Komarek was entitled to retain the $5,000.00 each paid by Deal No. 2 plaintiffs, but not to damages from them.

■■ The trial court found for the defendant Komarek and against the Deal No. 1 plaintiffs on their complaint, and consequently for Komarek on his counterclaim against them. The express basis for this finding was that these plaintiffs were estopped by their conduct subsequent to the execution of the Operating Agreements, as shown by parol evidence, the admission of which we have indicated was error. However, we have held that where under the facts a trial court could only come to one legal conclusion, and has reached the correct one, although for the wrong reason, we will affirm its judgment.[1] According to our holding that the operating agreements were plain and unambiguous, Komarek was entitled to recover from the Deal No. 1 plaintiffs the pro rata share of expenses in drilling the well, in the amount of $2,149.10 each.

The judgment of the trial court is affirmed as to that part relating to plaintiffs' first cause of action and to the defendant Komarek's counterclaims and reversed as to plaintiffs' second cause of action, and the trial court is directed to enter judgment in accordance with this decision.

JENNINGS and LOCKWOOD, JJ., concurring.

1. Day v. Wiswall, 381 P.2d 217 (Arizona).