426 P.2d 639

STATE of Arizona, Appellee,

v.

Vernon Oliver MARTIN, Appellant.

No. 1542.

Supreme Court of Arizona.

In Banc.

April 14, 1967.

**144**

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., Jerry L. Smith, Coconino County Atty., for appellee.

Wilson, Compton & Stoops, Flagstaff, Dushoff, Sacks & Corcoran, by Robert J. Corcoran, Phoenix, for appellant.

BERNSTEIN, Chief Justice.

Defendant was charged with First Degree Murder under A.R.S. § 13-452 in the death of one Wesley Hudman. He was tried in the Superior Court for Coconino County and found guilty of the charge. From this conviction and the imposition of the death penalty, the defendant appeals.

The facts are not in dispute. The defendant admittedly shot and killed Hudman. At trial he relied on his defense of insanity. On appeal defendant complains of a wrongful deprivation of the opportunity, one, to present his own defense, two, to take the stand on his own behalf, and three, to properly establish his insanity defense. In addition he contends other enumerated trial irregularities also prevented a fair trial.

The matter of first concern is the defendant's contention that he was wrongfully deprived of an opportunity to conduct his own defense. This assignment of error arises by reason of the fact that his defense was conducted by a court appointed counsel although the defendant had made it exceedingly clear on numerous occasions that he did not wish to be represented by counsel and that he preferred to present his own defense. The defendant claims that the trial court's action in forcing counsel upon him contradicts the constitutional guaranty to defend oneself in propria persona.

Article 2, Sec. 24 of the Arizona Constitution, A.R.S. provides that, "In criminal prosecutions, the accused shall have the right to appear and defend in person * * *." This provision has been interpreted to vest in a defendant the "explicit" right to defend himself should he so choose. State v. Westbrook, 99 Ariz. 30, 406 P.2d 388; State v. Van Bogart, 85 Ariz. 63, 331 P.2d 597. Although this right and the right to the assistance of counsel have been

deemed to be of "equal stature", State v. Westbrook, supra, extreme caution must nevertheless be exercised before recognizing an assertion of the right to defend oneself as a waiver of the right to counsel. Our adversary system in which lawyers in criminal courts become "necessities, not luxuries" demands this caution. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

■ In the present case the defendant demanded time and time again that he be allowed to conduct his own defense. Such expressions alone, however, should not be determinative of a waiver of assistance to counsel. As stated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused."[1] Under proper circumstances this may require the court to appoint counsel to conduct the defense despite the defendant's desire to defend for himself. In short, the defendant must not only wish to represent himself, he must also be competent to waive his right to counsel. Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429. In the same breath, however, once it is determined that a competent waiver has been made it is not within the province of the trial judge to thrust counsel upon the defendant. Benton v. United States, 352 F.2d 59 (9th Circuit). This, advisedly, does not mean that under such circumstances the trial judge would be in error to appoint counsel to be present

to assist the accused should he later request such assistance.

The problem then in the instant case concerns whether the defendant was able to make an intelligent and competent waiver of counsel.

■ The record indicates that the court failed to give sufficient consideration to this question. When asked by the defendant why he would not permit him to defend himself, the trial judge replied among other things:

"Because you're not smart enough."

\* \* \* \* \* \*

"No judge ever permits a defendant to represent himself in \* \* \* [a murder case]."

\* \* \* \* \* \*

" \* \* \* I will not allow you to go to trial without an attorney. It is far too complicated. You would be doing yourself a disservice and everyone else."

While it is right that the court should indulge in every reasonable presumption against a waiver, see State v. Anderson, 96 Ariz. 123, 392 P.2d 784, this in no way implies that it should refuse to consider the defendant's request altogether. Otherwise the constitutional right to defend oneself if he intelligently and competently chooses would be illusory.

■ The trial court judge in the present case ordered two separate hearings under Rule 250 of our Criminal Rules of Procedure, 17 A.R.S. to determine whether the defendant was able to stand trial. It has been firmly established that such a hearing is also to be used to deal with the cautionary requirement relating to the competency of the defendant's waiver of counsel. State v. Westbrook, 101 Ariz. 206, 417 P.2d 530.[2]

1. Although Johnson v. Zerbst is a pre-Gideon opinion, it is interpretive of the 6th Amendment which contrary to the views of Justice Harlan in his concurrence in Gideon has been in this significant part incorporated into the 14th Amendment along with its previous federal interpretations. See State v. Anderson, 96 Ariz. 123, 392 P.2d 784.

2. This second Westbrook decision was per curiam and was written as a result of the United States Supreme Court's decision, 384 U.S. 150, 86 S.Ct. 1320, 16 L. Ed.2d 429, vacating the first Westbrook decision, 99 Ariz. 30, 406 P.2d 388.

As a result of this *Westbrook* decision, a trial court judge, having reasonable grounds to believe a defendant to be insane or mentally defective shall order a "250 hearing" to determine:

"1. Whether [the] defendant is insane or mentally defective to the extent that he is unable to understand the proceedings against him,

2. Whether [the] defendant is insane or mentally defective so as to be unable to assist in his defense, *and*

3. [If the defendant requests to defend himself] Whether [the] defendant is insane or mentally defective to the extent that he is unable to intelligently and competently waive his constitutional right to the assistance of counsel and conduct his own defense."

 The test to be applied in determining whether one is legally capable of waiving counsel, however, is clearly *not* one of legal skills.[3] See United States v. Plattner, 330 F.2d 271 (2nd Circuit); United States v. Redfield, D.C., 197 F.Supp. 559; Burstein v. United States, 178 F.2d 665 (9th Circuit). Rather, as stated in Plattner, supra, it must be:

"* * * [an] inquiry bearing upon the defendant's capacity to make an intelligent choice. In other words, there must be a record sufficient to establish to our satisfaction that the defendant knows what he is doing and his choice is made with eyes open."

The fundamental question then is not one of the wisdom of defendant's judgment but whether the defendant's waiver of counsel was made in an intelligent, understanding and competent manner. The answer to this question must depend upon the particular facts and circumstances surrounding each case, including the background, experience, and conduct of the accused. All factors relating to the determination of whether the defendant knew exactly what he was doing when he waived his right to counsel are relevant.

 In the present case, as indicated previously, little attention was given to the above matters. However, we have stated that this court, on appeal, will affirm the judgment of the trial court reaching a correct legal conclusion although for the wrong reasons, Nicholas v. Giles, 102 Ariz. 130, 426 P.2d 398, filed April 6, 1967; Komarek v. Cole, 94 Ariz. 94, 381 P.2d 773; In re Sherrill's Estate, 92 Ariz. 39, 373 P.2d 353, and the principle applies to the present issue. It is within the trial judge's discretion to refuse to allow a defendant to continue his own defense if he acts in such a manner as to seriously disrupt the proceedings either by refusing to exercise the decorum necessary to orderly proceedings or by denying to the court the respect that is due it. Cf. United States v. Private Brands, Inc., 250 F.2d 554 (2nd Circuit). Although the trial court judge did not state such to be his reason for refusing the defendant here an opportunity to conduct his own defense, the record makes clear that this was, under the circumstances, good reason for appointing counsel to represent the defendant. From the outset, the defendant displayed utter and complete disrespect for the court. His repeated verbal outbursts, the tenor of these outbursts, his consistent disregard of the trial judge's warnings, and his wild antics in general make justifiable the judge's decision to refuse defendant's request to waive counsel.

Defendant claims that the failure of his counsel and the trial judge to honor his constant, and it might be added, vociferous requests to take the witness stand in his own behalf was a denial of a constitutional right and constituted reversible error. With this contention we agree.

---

3. Indeed if it were necessary for a defendant to satisfy such a test before being permitted to waive counsel, precious little would remain of the constitutional right to defend oneself, except perhaps in the case of an accused lawyer, who, even then, may have a fool for a client.

Article 2, Sec. 24 of the Arizona Constitution provides that, "In criminal prosecutions, the accused shall have the right * * * to testify in his own behalf * * *." This does not mean that this right cannot be waived. Clearly when the defendant and his counsel come to the conclusion for any reason that it would be better for the defendant not to testify, the defendant cannot later claim with the benefit of hindsight that the decision to keep him off the stand constituted reversible error. See State v. Galbreath, 97 Ariz. 361, 400 P.2d 842.

The real problem comes where, as here, the defendant unretreatingly demands that he be given the opportunity to testify but his counsel in direct contradiction to the defendant's wishes refuses to put him on the stand. A federal court, sitting in this state, in holding that a defendant was bound by his counsel's decision to waive the sixty day requirement set out in Rule 236 of the Arizona Rules of Criminal Procedure said, "once he (defendant) elects to be represented by counsel,[4] the conduct of all phases of the trial is under the exclusive dominion and control of said attorney until such time as he is fully and formally discharged." Application of Hitchcock, D.C., 199 F.Supp. 228, cert. denied, 369 U.S. 857, 82 S.Ct. 944, 8 L.Ed.2d 15, cert. denied, Hitchcock v. Eyman, 376 U.S. 924, 84 S.Ct. 684, 11 L.Ed.2d 619. The holding of this case, although sound, should not be given carte blanche application. As was said by the United States Supreme Court in Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, "* * * trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims." It is our opinion that the circumstances in the present case are "exceptional". That the right to testify in one's own behalf is revered, is apparent from the fact that it is constitutionally guaranteed. This right will not be deemed to have been waived by reason of an independent determination on the part of the defendant's counsel. Rather, the matter should be subject to the defendant's consideration before such a waiver is adopted as a part of the defense's trial strategy.

The record in this case makes it clear that the defendant and his attorney were far from agreement on the attorney's determination to keep the defendant off the stand. Where the record clearly shows such disagreement and there is no evidence that the defendant later acquiesced, we will consider failure to permit the defendant to take the stand reversible error. This position, however, is subject to the limitation that the defendant make his objection known at trial; not as an afterthought. See State v. Narten, 99 Ariz. 116, 407 P.2d 81.

We disagree with the defendant's contention that the trial judge committed error in having the defendant bound and gagged at various stages throughout the trial. It is incumbent upon the trial judge presiding at a public trial to preserve the dignity of the court by seeing that order is maintained. This is not only a right, but a duty. State v. Van Bogart, supra. The following is a quote from our Van Bogart decision where the trial judge's decision to gag the defendant was upheld:

> "While we concede that the meaure employed by the court was drastic, yet, it is not only the right but the duty of a presiding judge to maintain order and decorum in the courtroom while the court is in session. The failure to do so would quickly bring a court into disrepute to the extent that it could neither demand nor command the respect of the public. The methods employed by the court to maintain order and dignity in the courtroom are commensurate with the necessities of each case. The defendant was clearly in contempt of court but punishment for his misconduct by subsequent fine or

---

4. We do not rely on this fact distinction to distinguish the case.

imprisonment' was wholly inadequate to cope with the situation."

In the present case, the defendant did about everything in his power to be disruptive of the trial proceedings. His continuous antics and verbal vilifications left the patient and learned trial court judge with no other choice but to have him bound and gagged.

The remaining two contentions to be discussed relate to the defense of insanity. The first concerns the burden of proof on the issue of insanity and the second concerns the nature of relevant evidence in regards to establishing the fact of insanity.

 The defendant contends that it was error on the part of the trial court to refuse to instruct the jury that the burden was on the prosecution to prove defendant's sanity beyond a reasonable doubt. In State v. Schantz, 98 Ariz. 200, 403 P.2d 521 we said that once "insanity is an issue, the burden of the state is to establish beyond a reasonable doubt the converse." We believe the position taken by us in State v. Schantz, which is supported by a number of other jurisdictions, People v. Tobin, 176 N.Y. 278, 68 N.E. 359; Howard v. United States, 232 F.2d 274 (5th Cir.); State v. Iverson, 77 Idaho 103, 289 P.2d 603; People v. Munroe, 15 Ill.2d 91, 154 N.E.2d 225; Jenkins v. State, 238 Md. 451, 209 A.2d 616, is sound. In applying the rule, insanity will be deemed to be "an issue" once the defendant introduces sufficient evidence to raise a doubt as to his sanity under the rule of McNaghten's case.[5] When such evidence is introduced, it then becomes incumbent upon the state, commensurate with our decision in State v. Brock, 101 Ariz. 168, 416 P.2d 601, to prove beyond a reasonable doubt that:

1. The defendant knew the nature and quality of his act, and

2. The defendant knew that what he was doing was wrong.

The final contention to be considered concerns the admissibility of an army medical report relating to a mood disorder suffered by the defendant following a bout with yellow fever and subsequent hepatitis in 1942. The defendant's depression following the illness, according to the report, included "ideas of guilt", "nihilism", "restlessness", and "self condemnation" and defense counsel sought to introduce this evidence at trial to show the onset of "psychotic paranoid tendencies" which, according to expert testimony, can develop over a relatively long period of time. However, the trial judge, upon objection by the prosecutor, ruled that the evidence was too remote and therefore inadmissible.

 The following quote from our recent decision in State v. Griffin, 99 Ariz. 43, 406 P.2d 397, is directly in point:

"To resolve this vital issue of criminal responsibility it is necessary that the jury have the entire picture of the defendant. Insanity resulting in criminal acts is not a sudden growth even if the prohibited conduct seems to be of a sudden explosive nature. Weihofen, Mental Disorder As A Criminal Defense, p. 323 (1954). The condition of the defendant must be explained to the jury in understandable terms. We have held that it is always permissible, when searching for the real cause "to show previous troubles" if it throws light on the act constituting the crime or explains the reason for its commission. Talley v. State, 18 Ariz. 309, 159 P. 59 (1916); Leonard v. State, 17 Ariz. 293, 151 P. 947 (1915)."

Therefore, evidence which may have a bearing on the questions of whether the defendant understood the nature or quality of his act and whether he knew right from wrong, State v. Brock, supra, will not be deemed too remote for the jury's consideration. Consequently the evidence of the defendant's past illness and the resulting

---

5. If no such evidence is introduced, the presumption that all men are sane will prevail. Foster v. State, 37 Ariz. 281, 294 P. 268.

mental effects should properly have been admitted in evidence.

Judgment reversed.

McFARLAND, V. C. J., and STRUCK-MEYER and LOCKWOOD, JJ., concur.

UDALL, Justice (specially concurring):

I concur generally in the conclusions reached by the majority; however, I disagree with the majority's statement that the trial judge failed to give sufficient consideration to the question of whether the defendant was able to make an intelligent and competent waiver of counsel. By quoting the portions of the record relating the judge's statements that defendant was not smart enough to defend himself, among other things, the majority implies that the trial judge refused altogether to consider defendant's request to defend himself. It is my opinion that the trial court did not so act.

The judge on the bench at the trial was also on the bench at defendant's arraignment. The record indicates that at the arraignment the judge spoke with defendant at some length concerning the defendant's desire to defend himself, at the conclusion of which defendant requested that a public defender be appointed to defend him—the request was granted. Thus, it is clear that prior to the beginning of the trial the judge was not required to consider the question of whether defendant was able to make an intelligent and competent waiver of counsel, for such was rendered unnecessary by defendant's own request that counsel be appointed.

It was at the earliest stages of the trial that defendant's conduct indicated he intended, one way or another, to sabotage and make a mockery of the proceedings. For example:

"THE DEFENDANT: Let's go! I'm ready! I'm ready for the 'knock down, drag out!' You have to convict me in '60 days' or turn me loose, Mr. Wren! You have to convict me in '60 days!'

"THE COURT: You can talk through your attorney, Mr. Martin. You will be given an opportunity to testify, but there are legal technicalities * * *.

"THE DEFENDANT: I know what legal technicalities are and I don't think you got them! You can't count them! You haven't got any technicalities; no technicalities!

"THE COURT: Do you want this Court to gag you?

"THE DEFENDANT: I don't give a damn what you do. I'm going to die anyway. I want justice. I won it once, hands down. I want it now!

"Read that blue book on crime and it says in there you only have '60 days' to do this! I won it at the preliminary hearing. You will make them let me go!

\* \* \* \* \* \*

"THE DEFENDANT: I'm going to win this thing with a knock down, drag out brawl and a hell raising campaign or else I'm going there in that hole and die.

"THE COURT: Mr. Martin!

"THE DEFENDANT: I'm not going back to that hole to die! I'm sticking to this thing right now! You are not going to push me around. This is the third month. I've been in that hole three months. Any American and everybody has 60 days for a trial or turn him loose and you know it, Mr Wren!

"THE COURT: Your attorney knows far more about it. He has looked * *

"THE DEFENDANT: * * * technicalities. Mr. Smith's nothing but a dirty rat, himself, to permit this thing to go on.

"THE COURT: Would you take him out and gag him?

"THE DEFENDANT: I want to be gagged. I'll go to the hole."

At that point in the proceedings the trial judge was justified in concluding that counsel to represent the defendant was a necessity if the trial were to proceed. In fact,

since the defendant's outbursts and displays of utter and complete disrespect for the court necessitated his handcuffing and gagging as early in the trial as voir dire examination of the prospective jurors, it would have been impossible to conduct the trial if defendant had not been represented by counsel.

Hence, the majority's statement that the trial judge failed to give sufficient consideration to defendant's request implies that the judge was under an obligation in the instant case to do something which was not necessary. For, it is my opinion that under the facts and circumstances of this case as mentioned above, there was absolutely no reason for the judge to even seriously consider such a request.

In reference to the other issues raised in the case by the defendant, I am in full accord with the opinion of the majority.