NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JOSEPH ADAM DAZEN, *Appellant.*

No. 1 CA-CR 19-0339
1 CA-CR 19-0378
(Consolidated)
FILED 8-18-2020

---

Appeal from the Superior Court in Maricopa County
No. CR2017-152063-001
CR2018-106930-001
The Honorable George H. Foster, Jr. (Retired)

**VACATED IN PART; REMANDED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian Coffman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence S. Matthew
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

_____

**C R U Z**, Judge:

¶1   Joseph Adam Dazen appeals his conviction for misconduct involving weapons in CR2018-106930-001, the resulting revocation of his probation in CR2017-152063-001, and the sentences imposed. For the following reasons, we vacate the superior court's order denying Dazen's motion to suppress. This appeal is stayed until after the superior court conducts further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

¶2   Phoenix Police Officers DiCarlo and Carnahan were on patrol when they confronted Dazen in an alley. Officer Carnahan patted Dazen down and found a loaded handgun in his waistband. Dazen admitted he had a prior felony conviction. In fact, Dazen was on probation for that conviction.

¶3   The State charged Dazen with misconduct involving weapons based on his status as a prohibited possessor and sought to revoke his probation. Dazen subsequently moved to suppress evidence of the handgun, arguing the encounter with Officers DiCarlo and Carnahan violated his Fourth Amendment rights. After denying Dazen's request for an evidentiary hearing, the superior court denied the motion. Dazen subsequently waived his right to counsel and proceeded to represent himself at trial.

¶4   The jury returned a guilty verdict. Because the verdict automatically resulted in a violation of Dazen's probation conditions, the superior court revoked his probation and imposed consecutive sentences. Dazen timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and 13-4033(A)(1).

**DISCUSSION**

¶5        Dazen argues the superior court erred by granting his request for waiver of trial counsel.  Dazen also challenges the court's denial of his motion to suppress.

I.        Waiver of Counsel

¶6        "[A] waiver of counsel 'must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege . . . .'"  *State v. Dann*, 220 Ariz. 351, 359, ¶ 16 (2009) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)).  Thus, to validly waive counsel, "[a] prospective *pro se* litigant must understand (1) the nature of the charges against him, (2) the dangers and disadvantages of self-representation, and (3) the possible punishment upon conviction."  *Id.* at 360, ¶ 24 (citation omitted).  We review the superior court's determination that a defendant made a voluntary, knowing, and intelligent waiver of his right to counsel for an abuse of discretion.  *See id.* at ¶ 25.

¶7        Dazen contends his waiver was not knowing and intelligent because, although he knew when he waived counsel that he faced consecutive sentences, he did not understand that his time spent incarcerated would be applied to the first sentence only.  *See* A.R.S. § 13-708(E) (when a defendant is convicted of a dangerous offense while on probation, probation must be revoked and consecutive sentences imposed); *State v. McClure*, 189 Ariz. 55, 57 (App. 1997) ("When consecutive sentences are imposed, a defendant is not entitled to presentence incarceration credit on more than one of those sentences, even if the defendant was in custody pursuant to *all* of the underlying charges prior to trial.").  Dazen mistakenly assumed both sentences would be credited with all pre-sentence time served, equally day-for-day.  But he fails to cite a case where a defendant's misunderstanding regarding the proper application of pre-sentence incarceration credit to consecutive sentences was a factor in finding a waiver of counsel invalid.  *See State v. Martin*, 102 Ariz. 142, 146 (1967) ("All factors relating to the determination of whether the defendant knew exactly what he was doing when he waived his right to counsel are relevant.").  And a defendant's comprehension of such a technical aspect of criminal law is not necessary for a constitutionally valid waiver of counsel.  *Id.* ("The test to be applied in determining whether one is legally capable of waiving counsel . . . is clearly [n]ot one of legal skills.").

¶8        In any event, the record amply demonstrates that Dazen voluntarily, knowingly, and intelligently chose to waive counsel and

represent himself at trial. After Dazen completed and signed a waiver form that thoroughly explained his right to counsel, the superior court held an extensive colloquy with him, during which the court advised Dazen of the range of punishment he faced. Throughout the colloquy, Dazen consistently indicated he understood the charges against him, the risks associated with proceeding without counsel, and his potential punishment. After the court explained the sentencing consequences of a guilty verdict, it asked Dazen whether he understood the information about the possible punishments. Dazen responded, "Really, the longer I sit in here, the more [sic] smarter I get about this." Accordingly, the superior court did not abuse its discretion by granting Dazen's waiver of counsel. *See State v. Cornell*, 179 Ariz. 314, 324 (1994) ("Although a court should warn of the dangers and disadvantages generally inherent in self-representation, it is not reversible error to fail to warn of every possible strategic consideration." (citation omitted)).

II.     Motion to Suppress[1]

**¶9**      The Fourth Amendment protects people from unreasonable searches and seizures. *Scott v. United States*, 436 U.S. 128, 137 (1978). Generally, a warrantless search is *per se* unreasonable under the Fourth Amendment. *State v. Branham*, 191 Ariz. 94, 95 (App. 1997) (citing *State v. Castaneda*, 150 Ariz. 382, 389 (1986)).

**¶10**      "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). The Fourth Amendment governs such seizures. *Id.* However, the United States Supreme Court has recognized that some seizures are significantly less intrusive than an arrest and may be "reasonable," thus withstanding scrutiny under the Fourth Amendment without probable cause. *Michigan v. Summers*, 452 U.S. 692, 697-98 (1981). As a result, if an officer has "reasonable suspicion" that a person is engaged in criminal activity, the officer may investigate and briefly detain the person to "effectuate the purpose of the stop [and] . . . the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). During such a seizure, a "*Terry* pat-down" or "protective frisk" permits officers to conduct a weapon search limited to the outside of clothing in order to protect themselves and others in

---

[1]      The State argues that Dazen has waived this issue. We find, however, that Dazen sufficiently raised the issue before the superior court and in his opening brief. Finding no waiver, we decide the issue.

circumstances where they lack probable cause to make an initial arrest. *Terry*, 392 U.S. at 27, 29-30.

**¶11**　　　　Whether a *Terry* pat-down is constitutionally valid further turns on whether a police officer who reasonably suspects that criminal activity is "afoot" encounters a person consensually. During a consensual encounter, the officer may permissibly conduct a *Terry* pat-down if the officer reasonably believes the person is both armed *and* dangerous. *State v. Serna*, 235 Ariz. 270, 275, ¶¶ 21-22 (2014); *see Gastelum v. Hegyi*, 237 Ariz. 211, 213, ¶ 6 (App. 2015) (discussing *Serna*); *but cf. State v. Primous*, 242 Ariz. 221, 223, ¶ 11 (2017) ("Although a frisk is less intrusive than a full-body search, the Fourth Amendment prohibits any search of an individual unless the police have a reasonable belief that crime is afoot and the individual is armed and dangerous."). If the encounter is non-consensual, a *Terry* pat-down is constitutionally justified if the officer reasonably believes only that the person is armed; whether he or she also presents a danger is not required for Fourth Amendment purposes. *Gastelum*, 237 Ariz. at 214, ¶ 11.

**¶12**　　　　The exclusionary rule prevents the introduction of evidence seized in violation of a person's Fourth Amendment rights. *State v. Hackman*, 189 Ariz. 505, 508 (App. 1997). A defendant seeking to suppress evidence based on a purported Fourth Amendment violation must initially establish a *prima facie* violation. *State v. Hyde*, 186 Ariz. 252, 266 (1996); *see also* Ariz. R. Crim. P. 16.2(b). Such a burden is preliminarily met when the defendant establishes the evidence was seized pursuant to a warrantless search. *Rodriguez v. Arellano*, 194 Ariz. 211, 215, ¶ 12 (App. 1999).

**¶13**　　　　If the defendant successfully meets that burden, the State can avoid the exclusionary rule by proving with a preponderance of the evidence that the seizure ultimately comported with the Fourth Amendment through, for example, application of a recognized exception to the warrant requirement such as a *Terry* stop. Ariz. R. Crim. P. 16.2(b)(1); *State v. Gasbarri*, 248 Ariz. 619, 621, ¶ 8 (App. 2020).

**¶14**　　　　Here, although the State was prepared to present witnesses for an evidentiary hearing, the superior court declined and relied solely on Officer DiCarlo's incident report. That report indicated Officers DiCarlo and Carnahan approached Dazen in an alley after observing him adjust his pants and appear to urinate. The officers asked Dazen what he was doing, and he responded that he was fixing his back brace. Dazen provided his identification. The officers did not arrest Dazen or issue a citation for the purported public urination.

¶15        The report then states, in relevant part:

> Due to [Dazen] exhibiting suspicious behavior, such as
> fidgeting with his waistband and appearing nervous by
> shaking, Officer Carnahan had [Dazen] place his hands on his
> head and frisked him for weapons.  Officer Carnahan frisked
> the front of [Dazen's] waistband and felt what appeared to be
> a weapon, at which point [Dazen] stated that it was a gun.

¶16        Notably, the report does not indicate whether the officers
reasonably believed Dazen was armed or posed a risk of danger that would
justify the *Terry* pat-down.  Similarly, whether the encounter was
consensual—or whether the consensual nature changed during the
encounter—is left to speculation.  *See Serna*, 235 Ariz. at 272, ¶ 10 ("[P]olice
interactions with members of the public are inherently fluid, and what
begins as a consensual encounter can evolve into a seizure that prompts
Fourth Amendment scrutiny.").  Nonetheless, the superior court assumed
the officers were "reasonably concerned for their safety," and the court
improperly relied on the State's argument to find the officers "had been
provided a story regarding a back brace that did not make sense based upon
their training and experience, and [the] physical actions (conduct) by
[Dazen] suggestive of an attempt to hide or keep hidden a weapon."  *See
Gasbarri*, 248 Ariz. at 622, ¶ 11 ("[A] trial court must first have evidence—
not merely arguments of counsel—on which it can base its ruling before it
may rule on a motion to suppress.").  The court also found, without
evidentiary support, that the encounter between Dazen and the officers
occurred "in an area known as a high crime rate . . . . [And] typically, when
people are urinating in public, there's a high incidence of people who are
on drugs or medication or alcohol or have a history of mental health
problems; therefore, creating a danger or potential danger to law
enforcement."

¶17        The superior court abused its discretion by denying Dazen's
motion to suppress without first conducting an evidentiary hearing.  *See
State v. Cruz*, 218 Ariz. 149, 161, ¶ 47 (2008) (stating a ruling on a motion to
suppress evidence is reviewed for an abuse of discretion).  It was
undisputed that Officers DiCarlo and Carnahan seized the handgun from
Dazen's waistband without a warrant, and Dazen requested an evidentiary
hearing.  Dazen was, therefore, entitled to such a hearing where the State
would be required to satisfy its evidentiary burden.  *See Hyde*, 186 Ariz. at
270 ("If the challenged evidence was obtained without a warrant, the state
carries the entire evidentiary burden."); *Rodriguez*, 194 Ariz. at 215, ¶ 12.

**¶18** We vacate the court's suppression ruling and remand for the limited purpose of allowing it to hold a suppression hearing. This appeal is stayed pending the outcome of that hearing. If, as a result of the hearing, the superior court rules Dazen's Fourth Amendment rights were not violated, it will notify this court by causing a certified copy of its minute entry to be transmitted to the clerk of this court along with the hearing transcripts pursuant to Arizona Rule of Criminal Procedure 31.9. If either party elects to file a supplemental brief based on the hearing, they may do so within fifteen days of the superior court filing its minute entry. The matter will be deemed submitted after the filing time has expired, the stay will be lifted, and we will consider the remaining issues on appeal.

**¶19** If, however, the superior court finds a constitutional violation occurred, it shall enter an order setting aside Dazen's conviction and sentence. In that event, the stayed portion of this appeal will be dismissed as moot. *See State v. Peterson*, 228 Ariz. 405, 411, ¶¶ 20-21 (App. 2011) (ordering similar result in the context of a purported *Miranda* violation and involuntariness of defendant's statements).

## CONCLUSION

**¶20** The superior court's order denying the motion to suppress is vacated. We remand for further proceedings consistent with this decision.

