513 P.2d 953

**STATE of Arizona, Appellee,**

v.

**Edward Milo McMURRY, Appellant.**

**No. I CA–CR 434.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 6, 1973.

---

Gary K. Nelson, Atty. Gen. by William J. Schafer, III, Asst. Atty. Gen., Phoenix, for appellee.

Robbins, Green, O'Grady & Abbuhl by Philip A. Robbins, and Victor W. Riches, Phoenix, for appellant.

DONOFRIO, Presiding Judge.

Defendant Edward Milo McMurry appeals from a judgment of conviction of the crime of possession of a motor vehicle which he knew or had reason to believe was stolen pursuant to A.R.S. § 28–1423 following a jury trial, and from a sentence of not less than seven nor more than ten years imposed thereon by virtue of the Arizona recidivist statute, A.R.S. § 13–1649.

Defendant was charged in an information with possession of a vehicle belonging to one Leroy Tice who was a complete stranger to him, which vehicle he had reason to believe was stolen. In an addendum to the information was an allegation of a prior conviction for grand theft. The defendant was tried twice on the charge. The first trial ended in a hung jury, and a mistrial was declared. The second trial resulted in the "guilty" verdict.

The testimony presented at the second trial, taken in the light most favorable to upholding the judgment, established the following: The owner of the vehicle testified that he had driven his car to work on August 13, 1970 and had parked it at his place of employment. He first became aware that his automobile had been stolen when he received a phone call from the police later in the day. He stated that he did not know the defendant and that he had not given anyone permission to use his car. He further testified that upon recovering his car he noticed that its refrigeration unit, which was intact when he parked the car, had been dismantled.

Besides the owner, the State presented two other witnesses, the police officers who were on patrol in the area where the vehicle was subsequently found. One officer could not give any definitive statements as to the incident in question, which was primarily due to a poor vantage point. The State's case was principally founded upon the testimony of the other police officer, Officer Hosler, who at that time had been a member of the Phoenix Police Department for four years. Officer Hosler testified that at approximately 2:00 p. m. on the aforesaid date, while the officers were on routine patrol, their attention was called to a group of black males standing around a 1964 Chevrolet. The officer stated that the vehicle was foreign to the neighborhood which was a factor in arousing their suspicions. Officer Hosler stated that as their patrol car approached the subject vehicle he observed feet sticking out of the driver's side, with the rest of the subject's body slumped down on the seat out of his view. Then he stated he saw the individual who was slumped down on the seat get out of the automobile, stand up, and look straight at him. The patrolman stated that he had an unobstructed view of the individual for a full five seconds from a distance of approximately 100 feet and that he could positively identify that individual as being the defendant because he was personally acquainted with him. While there was a group of approximately 6 to 8 males milling around the vehicle, nearly all of whom were of the same age and build as the defendant, the testimony was that the other individuals were on the opposite side of the vehicle from the defendant when the officer stated that he first identified defendant. The defendant was alone on the driver's side of the vehicle as Officer Hosler approached. On cross-examination, certain discrepancies in the patrolman's testimony were brought out by defense counsel, but those discrepancies concerned fairly minute details and his testimony concerning identification of the defendant remained substantially intact. He further stated that upon the officers' ap-

proach, the entire group, including the defendant, began to run.

Defendant took the stand in his own behalf and testified that while visiting relatives his attention was called to the subject vehicle because its driver was making abrupt starts and stops and causing screeching sounds. He stated that his concern for his nephews and other children playing in the street caused him to investigate. He observed that there were about four or five people around the car and that there were two black males inside the car. He stated that he never entered the car. Upon the approach of the officers he said that someone shouted "Police" and the two occupants of the car jumped out and ran, as did those persons close to it. Defendant emphatically maintained that he did not run.

The defense presented three other witnesses, all friends or acquaintances of defendant, who essentially reiterated defendant's testimony. All stated that the defendant was never in the car.

We are called upon to determine the following questions:

1) Whether the evidence was sufficient to sustain a finding of guilt under A.R.S. § 28–1423, and whether the court properly instructed the jury on the law applicable;

2) Whether Officer Hosler's identification of the defendant was sufficient to justify submission of the case to the jury;

3) Whether questioning of the defendant by the prosecutor asking why he had never made denial of the charge to the police prior to trial was so prejudicial to him as to demand a reversal;

4) Whether Officer Hosler's direct testimony stating that he could positively identify the defendant because he had on previous occasions spoken to him was so prejudicial as to demand a reversal; and

5) Whether proof of the prior conviction was adequate to justify imposing an increased sentence under A.R.S. § 13–1649.

## WHETHER THE EVIDENCE WAS SUFFICIENT TO SUSTAIN A CONVICTION OF GUILT, AND WHETHER THE JURY WAS PROPERLY INSTRUCTED ON THE APPLICABLE LAW.

A.R.S. § 28–1423, under which defendant was tried and found guilty, provides as follows:

"Receiving or transferring stolen vehicle; penalty

"A person who, with intent to procure or pass title to a motor vehicle which he knows or has reason to believe has been stolen, receives or transfers possession of such vehicle from one to another, *or who has in his possession a motor vehicle which he knows or has reason to believe has been stolen, is guilty of a felony.*" (emphasis added)

In reviewing the instructions given as a whole, we find that the trial court more than adequately apprised the jury of the general nature of the case. Specifically, the trial court instructed the jury that the requisite elements of the crime charged were the theft of a vehicle and the possession of such stolen vehicle by one who knows or has reason to believe that the vehicle is a stolen vehicle. Defendant argues that, in addition, the statute requires that there be an intent to procure or pass title. We find, however, that the statute does not in all cases require the intent urged by defendant. All that is required in some cases is the possession of a stolen vehicle which a defendant knew or had reason to believe was stolen. While it is true that the statute may also be violated by receiving a stolen vehicle, intending to later procure or pass title to it, such is only one way in which the statute may be violated, not the only way. Defendant's alleged act came within the proscription of the latter half of the statute which is set apart from the por-

tion requiring intent to pass title by the disjunctive "or", and is quite clearly a separate and severable part. Thus, the statute establishes an offense when the person has in his possession a motor vehicle which he knows or has reason to believe has been stolen.

■ Further, in our recent decision in State v. Lerma, 17 Ariz.App. 110, 495 P.2d 880 (1972), this Court found that a defendant could be convicted under A.R.S. § 28-1423 if the jury found that he was in possession of a vehicle which he knew or had reason to believe was stolen. The crucial issue in the case at bar is whether the defendant was in possession of the vehicle, i. e., whether he managed or maintained physical control or dominion over it. We believe the State did place defendant in possession of the vehicle by showing that he was in it shortly after it was stolen, on the driver's side of the vehicle with his feet sticking out the door, and bent down on the seat in a position from which the jury could have inferred that he was working on something under the dashboard. It turned out that the vehicle's air conditioning unit was attached to the dash in that area; that it was intact before the theft, but when the vehicle was retrieved it was almost completely disconnected and lying on the floorboard on the driver's side of the car. While such evidence is largely circumstantial, it nevertheless is entitled to the same consideration by the jury as direct evidence. State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970).

Although defendant denied running from the scene, the State's chief witness, Officer Hosler, unequivocally identified the defendant as the person behind the wheel and stated that he, too, took flight at the officers' approach. We are of the opinion that the defendant's culpability was clearly inferable from the totality of the evidence presented.

## WAS THE OFFICER'S IDENTIFICATION SUFFICIENT TO SUBMIT THE CASE TO THE JURY?

■ Defendant argues that because there was only one witness for the State placing him behind the wheel of the stolen vehicle, and there were four witnesses for the defense (including the defendant) who stated that he was never in the car, the State's evidence was insufficient to have the case go to the jury. We do not sustain this contention. The universal rule is that the courts will not engage in a numbers game and that the strength or weakness of testimony is not measured by the number of witnesses, but that the testimony of one witness, if relevant and credible, is sufficient to support a conviction. 23 C.J.S. Criminal Law § 903 at 540.

■ In attacking the credibility of the identifying officer's testimony, defendant argues that a five-second look from a distance of approximately one hundred feet while defendant was in the company of several other people of similar appearance is insufficient identification. We cite with approval a recent decision of the Indiana Supreme Court in Bryant v. State, 278 N. E.2d 576 (Ind.1972), in which the court found that a five-second look by a 74-year-old victim was sufficient identification to sustain an assault and battery conviction. In the instant case, there also is testimony to the effect that the officer had a direct, unobstructed view of the defendant; that the officer saw the defendant get out of the vehicle; that he could readily distinguish and identify him; and that the defendant was alone on the driver's side of the vehicle while the others in the group were on the other side. We find the identification by the officer in this case was sufficient evidence to have the case submitted to the jury. State v. Dutton, 83 Ariz. 193, 318 P.2d 667 (1957).

■ In this regard defendant also complains that the court "sanctified" an inadequate identification of him and in effect commented on the evidence in violation of Art. 6, Sec. 27 of the Arizona Constitution, A.R.S. This contention arose out of the court's granting permission for the record to reflect identification of the defendant in open court when the witness at that point had merely identified the defendant as being present at the scene, but before he

specifically placed defendant inside the vehicle. Defendant provides no authority or logic, however, for determining how the judge expressed an opinion on the mere statement that "The record may so reflect." In examining that portion of the record, we find that it merely reflects that the witness pointed out the defendant in the courtroom. From the totality of the testimony of the witness, we find that the jury could reasonably resolve that defendant had been adequately identified.

### WAS DEFENDANT'S CROSS-EXAMINATION CONCERNING THE FACT THAT HE HAD NEVER MADE DENIAL TO THE POLICE PRIOR TO TRIAL SO PREJUDICIAL AS TO DEMAND A REVERSAL?

The defendant was cross-examined in part by the County Attorney as follows:

"Q When was the first time you told anyone that Sidney Dodds was the driver of the car?

"A When was the first time I told anyone?

"Q Yes.

"A I guess after I got busted.

"Q What?

"A After I was incarcerated and I talked with Mr. Haislip.

"Q He was the first person you told?

"A Yes, because what I will—I was locked up, I really didn't know what I was locked up for until I had talked to him and he got additional information on it.

"Q Have you ever told any law enforcement officer that Sidney Dodds was the driver of that car and that you had nothing to do with it?

"MR. HAISLIP: Objection to that is immaterial. He's under no obligation to tell the officer.

"THE COURT: I will sustain the objection. You may rephrase the question, if it is material."

Defendant contends that this type of questioning amounted to improper impeachment by bringing out the defendant's earlier exercise of his constitutional right to remain silent. He has cited to us this Court's decision in State v. Greer, 17 Ariz.App. 162, 496 P.2d 152 (1972), wherein we said: "merely introducing admissions by silence during custodial periods for the purpose of proving guilt violates the self-incrimination privilege." 17 Ariz. App. at 163, 496 P.2d at 153. The Court in Greer noted that in that case the trial court made no rulings or admonitions as to the questionable cross-examination, and thus the prejudice to the defendant was undiminished. In the case *sub judice*, however, a prompt ruling was made by the trial judge sustaining the objection.

We believe that the circumstances of the present case are more analogous to those in the Arizona Supreme Court's decision in State v. Peterson, 107 Ariz. 268, 485 P.2d 1158 (1971), than to Greer. In Peterson, the defendant moved for a mistrial which was denied, but the prosecutor's line of questioning was not resumed. In the instant case, a timely objection was made and sustained and the prosecutor did not resume the questioning. In neither case did the defendant know what the charges were upon being arrested. As far as the jury knew in both cases, the defendant was never asked about the offense after he was apprised of the charges. The court in Peterson found that the error committed was harmless beyond a reasonable doubt and closed with the following comment, which we feel is equally applicable here:

"We are of the opinion, as was the court in Johnson v. People (Colo.), 473 P.2d 974, that the cross-examination does no more than approach the danger point of potential prejudice involving the defendant's Fifth Amendment rights, . . ." 107 Ariz. at 271, 485 P.2d at 1161.

We find the Peterson decision to be controlling on this issue. Likewise, Department B of this Division has recently deter-

mined that when a defendant fails to object to either the cross-examination or the prosecutor's argument as to his pretrial silence, he waives any right to later raise the issue. State v. Anderson, 20 Ariz.App. 309, 512 P.2d 613 (filed July 31, 1973). See also State v. Benton, 109 Ariz. 427, 510 P.2d 743 (filed June 12, 1973).

## WAS OFFICER HOSLER'S TESTIMONY ON DIRECT THAT HE WAS ABSOLUTELY CERTAIN THAT HE COULD IDENTIFY THE DEFENDANT BECAUSE HE HAD SPOKEN TO HIM ON SEVERAL OCCASIONS PREJUDICIAL?

█ At the close of his testimony on direct examination, Officer Hosler testified as follows:

"Q Officer Hosler, are you absolutely certain the defendant is the individual you saw in that vehicle?

"A I am.

"Q And, why are you certain of this fact?

"A I know Mr. McMurry. I have had occasion to talk with him on several occasions, for approximately two years."

Defendant asserts that the only implication that could flow from such testimony is that he knew defendant only from his position as a policeman. With this assertion we cannot agree. A police officer is acquainted with people other than in his capacity as a law enforcement officer, e. g., friends, business acquaintances and neighbors. Even in his role as policeman, not all persons with whom he comes in contact are those suspected of criminal conduct. Many are victims of crimes, witnesses to crimes, and traffic accident victims, to name a few. Thus, while it is conceivable that the jury could have inferred what the defendant alleges, they could also have inferred that the contacts with defendant could have been completely removed from the crime suspicion context.

█ It should be noted that it was defense counsel who brought out on cross-examination that the officer's contacts with the defendant came about as the result of prior investigations by Officer Hosler in his role as policeman. When a defendant invites error in a case at trial, he may not later assign it as error on appeal, State v. Arriola, 99 Ariz. 332, 409 P.2d 37 (1965), nor will he be allowed to take advantage of a wrong which he or his counsel provokes. State v. Gilreath, 107 Ariz. 318, 487 P.2d 385 (1971), cert. denied, 406 U.S. 921, 92 S.Ct. 1781, 32 L.Ed.2d 121 (1972).

## WAS PROOF OF THE PRIOR CONVICTION SUFFICIENT TO IMPOSE AN INCREASED SENTENCE UNDER A.R.S. § 13–1649?

█ On cross-examination the defendant admitted that he had a previous felony conviction, and after several leading questions was able to determine a specific date for the conviction. Such questioning is, of course, permissible. See State v. Hutton, 109 Ariz. 356, 509 P.2d 626 (1973).

█ Defendant argues, however, that such admissions are insufficient to establish a prior felony conviction for the application of the Arizona recidivist statute, citing State v. McGriff, 7 Ariz.App. 498, 441 P.2d 264 (1968), wherein the Court found that an admission must support a particular conviction, and failing to do so, proof of such is inadequate and increased sentence invalid. It is important to note that the Court's determination in McGriff was based in substantial part upon the fact that there had been no adjudication regarding the prior conviction. See Rule 180, Rules of Criminal Procedure, 17 A.R.S. In the instant case, however, there is both a dialogue in the reporter's transcript between the court and counsel in chambers concerning the matter, and the court's subsequent directing of a verdict of guilty to the prior conviction and an adjudication in open court regarding the prior which was recorded by minute entry entered on May 14, 1972. We have said that we will accept a minute entry recital as to adjudication of prior conviction as speaking the

**422**

truth, even though the transcript is silent on the matter. State v. Rockerfeller, 9 Ariz.App. 265, 451 P.2d 623 (1969), cert. denied 396 U.S. 920, 90 S.Ct. 247, 24 L. Ed.2d 199 (1969). This case is even stronger for finding a sufficient admission than was Rockerfeller. Therefore, because of the adjudication on the prior conviction, McGriff is distinguishable and inapplicable here.

Further, the adjudication came after the jury had returned a verdict of guilty. Thus, it did not come before the jury when it could have influenced their deliberation. *See* State v. King, 106 Ariz. 478, 478 P.2d 102 (1970).

In State v. Seymour, 101 Ariz. 498, 421 P.2d 517 (1966), the Arizona Supreme Court stated:

". . . An admission on cross-examination is surely the strongest evidence available to prove a prior conviction for it may be said with certainty that there is no danger that an accused will falsely testify that he has been previously convicted and thus, the truth of the fact is assured." 101 Ariz. at 500, 421 P.2d at 519.

The court went on in that case to find that admission of a "felony of burglary in Texas" was sufficient for the court to conclude that the former conviction admitted by the defendant on the stand was the same one charged in the information. The court then added the following comment:

". . . We think that in such a case, the production of other evidence by the State to show the previous conviction would have been an idle formality and therefore, we are satisfied there was sufficient proof to support the verdict as to the charge of the prior conviction of defendant." 101 Ariz. at 500, 421 P.2d at 519.

Similarly, in State v. King, *supra*, the Arizona Supreme Court found a sufficient admission of a prior where the defendant merely admitted that he had previously been convicted of a felony on a specific date and that he had spent time "in the

Pen." Further, our new Rules of Criminal Procedure provide that a defendant's admission shall be sufficient proof of the prior conviction. Rules 17.6 and 19.1(b)(2), Rules of Criminal Procedure, 17 A.R.S. (Effective September 1, 1973).

In light of the above, we find defendant's admissions in the case at bar sufficient to support the increased sentence imposed. We also find that such sentence could legally be imposed within the provisions of A.R.S. § 13–1649, subsec. A.

Judgment of conviction and sentence affirmed.

OGG and STEVENS, JJ., concur.