546 P.2d 45

**The STATE of Arizona, Appellee,**

v.

**Clarence Eugene JONES, Appellant.**

**No. I CA–CR 1231.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 13, 1976.

Rehearing Denied March 23, 1976.
Review Denied April 20, 1976.

**70**

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III, Ronald L. Crismon, Asst. Attys. Gen., Phoenix, for appellee.

David M. Lurie, Phoenix, for appellant.

OGG, Judge.

After a trial by jury, appellant was convicted of armed robbery of a Circle K store on January 20, 1974 and sentenced to not less than five nor more than five and one-half years in Arizona State Prison. This sentence was to run consecutively to the ten to fifteen year sentence imposed upon defendant in Maricopa County Case No. CR–80136, which was affirmed by this court on February 13, 1976, No. 1 CA–CR 1230.

On appeal, appellant raises six issues:

1. Whether the trial court improperly admitted evidence referring to the robbery of another Circle K store on two other occasions.

2. Whether appellant's confession should have been suppressed because it was obtained by the means of promises that appellant would receive assistance with his drug problem.

3. Whether there is sufficient evidence to support the conviction of armed robbery.

4. Whether the trial court erred in commenting on the evidence by stating that the record may reflect that a witness identified appellant.

5. Whether the trial court should have granted a mistrial after appellant was gagged and placed in a straitjacket in the presence of the jury.

6. Whether the trial court erred in refusing appellant's request to discharge his counsel.

As to the first issue, the trial court allowed the state to introduce evidence as to two other robberies of another Circle K store committed by appellant. These two other robberies occurred on January 4 and February 15, 1974. The robbery for which appellant was convicted occurred on January 20, 1974. The two other robberies involved the *same* Circle K store and the same clerk.

■ The general rule is that evidence showing or tending to show the commission of another crime entirely distinct and independent of that for which a defendant is on trial is not admissible. *State v. Tuell*, 112 Ariz. 340, 541 P.2d 1142 (1975); *Dorsey v. State*, 25 Ariz. 139, 213 P. 1011 (1923). However, there are exceptions to this general rule. Evidence of another criminal act will be admitted if it directly establishes some essential element of the crime charged or has an independent relevancy for some purpose other than showing a probability that the accused committed the crime for which he is on trial merely because he is of criminal character. *Tuell*, supra; *State v. Ballesteros*, 100 Ariz. 262, 413 P.2d 739 (1966).

■ In the current case, the state offered the evidence of appellant's other crimes in order to bolster the witness's identification of appellant. The state argued that because appellant had committed two other crimes in a similar manner, it was likely that he was the perpetrator of the instant offense as well. Preliminarily, it should be noted that where the other offenses are admitted to show identity or a common design or scheme, the degree of similarity required is greater than when the other crimes are admitted to show intent, motive or the absence of mistake or accident. Wigmore, *Evidence*, Section 304 (3rd Edition 1940). Compare *State v. Little*, 87 Ariz. 295, 350 P.2d 756 (1960) with *State v. Tisnado*, 105 Ariz. 23, 458 P. 2d 957 (1969). When evidence is offered to prove identity through a similar modus operandi, the following standard has been applied:

It is required that there be a high degree of similarity between the offenses and an element of uniqueness in the method of committing the crimes so as to give grounds for the inference that the crimes are committed by the same person. *State v. Hernandez*, 7 Ariz.App. 200, 437 P.2d 952 (1968).

Our Supreme Court has stated when other crimes are admitted to show common plan or scheme, the similarities between the offenses "must be in those important aspects where normally there could be expected to be found differences. Evidence is not admissible except as it may show a tendency or likelihood of a plan common to all offenses to commit the crime." *State v. Akins,* 94 Ariz. 263, 266, 267, 383 P.2d 180, 182, 183 (1963); *State v. Moore,* 108 Ariz. 215, 495 P.2d 445 (1972). It has also been stated that "the requisite uniqueness and similarity may be manifested by the defendant's appearance, by the character of his physical acts, or by the accompanying circumstances." *State v. Latino,* 25 Ariz. App. 66, 540 P.2d 1285 (1975).

▮ Of course, each case must be decided on its own particular facts. Further, the trial court should be given considerable discretion in the admission of this type of evidence because it is in the best position to evaluate the evidence and to balance the probative weight of the evidence with the possible prejudice to the defendant. See *State v. Taylor,* 9 Ariz.App. 290, 451 P.2d 648 (1969); *State v. Finley,* 85 Ariz. 327, 338 P.2d 790 (1959); Udall, *Arizona Law of Evidence,* Section 115 (1975 Supp.) However, several Arizona cases are instructive on the degree of similarity necessary for admission.

In *Latino,* supra, Division Two of this court found the requisite degree of similarity between two automobile arson cases. The court stated:

Appellant was in financial difficulty before both fires. Both times it was his property that burned, he claimed he was in the Buggy Wheel Tavern when the fires occurred, and five-gallon cans filled with flammable liquid accelerants were used. Moreover, in both instances the cans were left on the scene with the apparent purpose of causing explosions. Finally, in both instances appellant collected insurance. We think the circumstances that surrounded the burning of

appellant's car and the burning of his house possess a high degree of similarity. In addition, the abandonment of accelerant-filled cans at the scene both times supplies an element of uniqueness. The evidence of the burning of appellant's car was sufficient to raise an inference that the same person burned his house. It was therefore admissible to establish identity.

In *State v. Wehrhan,* 25 Ariz.App. 277, 542 P.2d 1157 (1975), Division Two of this court upheld the admissibility of two other robberies for the purpose of establishing identity where the robber used stocking masks of the same color in each case and a long-barrelled gun.

In *State v. Moore,* 108 Ariz. 215, 495 P. 2d 445 (1972), our Supreme Court reversed a conviction where the only similarities between the subject robbery and another robbery occurring 42 days later were the use of guns and getaway vehicles and the fact that both occurred when no customers were present.

In the current case, the three incidents each involved a Circle K store and the two robberies occurred within 26 days and 16 days of the instant offense. Each occurred at approximately the same time of the evening (7:50 p. m.; 8:30 p. m.; 7:00 p. m.) In each case, appellant entered the store as a normal customer and did not attempt to conceal his identity or his features in any manner.

After unobtrusively coming into the store, appellant went to the refrigerator section containing the beer and wine and selected an item (a can of Schlitz beer was selected in two cases and a bottle of wine in the third). In each case, appellant took these items to the cash register in the manner of a normal customer. When it was his turn appellant told the clerk that he intended to rob the store and that he or she should empty both cash registers into a paper bag. In each case appellant either displayed a gun or told the clerk that he had a gun.

In two cases the clerk saw the gun and in the third the appellant indicated that it was under his coat. In each case appellant made an attempt to at least partially conceal the gun and only the barrel of the gun was displayed when the gun was visible.

Where the gun was observed, the descriptions of it were identical as being small and black. In each case, appellant did not accost or threaten the other customers in the store.

Finally, after receiving the money, appellant walked out of the store. None of the witnesses observed a getaway car in any of the cases.

Unlike the *Moore* case there is more similarity in the instant case than the use of a getaway car and a gun. Appellant's conduct in each case was similar in areas where there would normally be some slight differences. Accordingly, we cannot say that the trial court abused its discretion by permitting the evidence of other crimes to be admitted.

As to appellant's second ground on appeal, he claims that his confession should not have been admitted into evidence because it was obtained by improper promises that he would receive treatment for his drug problem. In support of this argument he cites *State v. McFall*, 103 Ariz. 234, 439 P.2d 805 (1968). While we agree that *McFall* contains the general principle of law governing this case, we cannot say that the trial court erred in finding that appellant's confession was not obtained by improper promises. The interrogating police officer definitely stated that no promises were made to appellant which induced his confession.

Even appellant did not testify as to any implied or express promises. In any event it is for the trial court to resolve any conflicts in the evidence and we are bound by that resolution. *United States v. Sherman*, 430 F.2d 1402 (9th Cir. 1970) cert. den. 401 U.S. 908, 91 S.Ct. 865, 27 L.Ed.2d 805, reh.

den. 401 U.S. 1015, 91 S.Ct. 1249, 28 L.Ed. 2d 552; *State v. Hughes*, 104 Ariz. 535, 456 P.2d 393 (1969). In light of the substantial evidence supporting the finding that no promises were made, appellant's second ground on appeal is without merit.

As to appellant's third ground on appeal, he claims that there was not sufficient evidence for the jury to find that he used a real gun in the robbery. However, both clerks in the store and a customer testified that they believed that the gun was real. We feel that there was sufficient evidence to support the jury's finding on this ground.

For appellant's fourth ground on appeal, on six occasions after a witness had pointed to the appellant, the prosecuting attorney asked the court "May the record reflect that the witness has identified the defendant." The trial court on each occasion responded "Yes, it may."[1] Although appellant did not object at the trial court level, he now claims that those requests and responses by the trial court constituted an improper comment on the evidence in violation of Article 6, Section 27 of the Arizona Constitution.

However, on each occasion, the court's comment simply reflects that the witness pointed to appellant and not to anyone else in the courtroom. The trial judge's statement was only for the clarification of the record and did not constitute a comment on the evidence. A virtually identical question was presented to this court in *State v. McMurry*, 20 Ariz.App. 415, 513 P.2d 953 (1973). The court concluded:

> Defendant provides no authority or logic, however, for determining how the judge expressed an opinion on the mere statement that "The record may so reflect." In examining that portion of the record, we find that it merely reflects that the witness pointed out the defendant in the courtroom.

1. The exact request and response varied somewhat on each occasion. However, the slight differences between each incident are unimportant for current purposes.

Likewise, appellant in the current case has provided no authority or logic for his argument and we feel that his fourth issue is without merit.

For his fifth ground on appeal, appellant claims that the trial court should have granted a mistrial after appellant was bound and gagged during the *voir dire* of the jury. As is often the case in disruption situations, the cold reporter's transcript does not capture all that occurred in the trial court and some of the events that occurred were placed on the record after the fact. The following recitation of facts is this court's best attempt to piece together a confused record.

Prior to the jury selection, the trial judge and appellant met in the hallway and in the anteroom of the court area. The defendant was unable to find any clothing other than his jail clothing to wear in court and the court attempted to make arrangements for other clothing. At this time the defendant stated that he did not want Mr. Martin (his court appointed counsel) for his attorney and that he would not go to trial that day. The court responded that it intended to select a jury that day and that appellant would have until the next day to confer with his attorney. The defendant responded "I am not going to trial, I am not going to select a jury." A deputy sheriff dragged appellant into the courtroom for the jury selection. Appellant again repeated his desire to discharge Mr. Martin as his attorney and stated "They're trying to railroad me." The court was apparently alarmed at defendant's continuing outbursts and sent for another deputy.

The trial court warned appellant several times that if he continued his outbursts the court would have him bound and gagged. In spite of these warnings defendant continued to speak and disrupt the proceedings. Finally, the trial court told appellant that it would allow him to remain in the courtroom without a gag if he would "behave himself in court." However, after conferring with his attorney, appellant refused to accept that condition. The court then had appellant bound and gagged for the remainder of the selection of the jury.

In an off the record discussion with the court, appellant's attorney moved for a mistrial because of appellant's conduct and because appellant stated that he had no defense to the charge.

The next morning the appellant submitted a letter to the court apologizing for his conduct and stating that he wished Mr. Martin to continue as his attorney. The court denied appellant's motion for a mistrial and ordered that the trial continue with Mr. Martin as appellant's attorney.

■ In reviewing the record, we feel that the trial court did not abuse its discretion in denying the mistrial. The trial court has the authority to (1) bind and gag an obstreperous defendant; (2) cite him for contempt, or (3) remove him from the courtroom until he promises to conduct himself properly. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *State v. Delvecchio*, 110 Ariz. 396, 519 P.2d 1137 (1974). In deciding which course to follow considerable latitude must be given to the trial court. *State v. Robinson*, 6 Ariz.App. 419, 433 P.2d 70 (1967).

In *Delvecchio*, our Supreme Court stated:

A trial judge has not only the right but the responsibility of seeing that trials are conducted properly and without disruption, and he is allowed to take those necessary measures to provide for the orderly disposition of criminal cases . . . A criminal trial is coercive in nature and a defendant will seldom voluntarily submit to such a trial. If a defendant, while exercising his right to represent himself, is able to disrupt a criminal trial to the point that a trial cannot be had, conceivably he could never be convicted of the crime of which he might be guilty. In the instant case the

**74**

defendant, by his own actions, lost the right to continue the conduct of his own trial.

110 Ariz. at 400, 519 P.2d at 1141.

Further, the *ABA Standards Relating to Trial by Jury* stated that physical restraint may be used when the trial court finds such restraint to be "reasonably necessary to maintain order" and that the restraint should be limited in amount to that shown to be necessary to prevent the particular harm anticipated. *ABA Standards Related to Trial by Jury* (Approved Draft, 1968). In *State v. Van Bogart*, 85 Ariz. 63, 331 P.2d 597 (1958), our Supreme Court held that it was proper to gag a defendant who interrupted the proceedings by inquiring "What's going on here" and stating that he was being railroaded and maintaining that he would not be quiet. We find the current situation to be very similar to *Van Bogart*. Appellant stated that he was being railroaded, called the judge a "sucker" and refused to be quiet in spite of repeated warnings. In light of the foregoing guidelines and appellant's active disruption of the trial, we feel that affirmative action by the trial court was appropriate.[2]

Appellant's argument that it would have been a simple matter to dismiss the jury and begin to empanel another jury is without merit. The disruptions in both *Van Bogart* and *Allen* occurred during the empanelment of the jury; yet, in neither case did the court consider empaneling a new jury an appropriate remedy. An indicated by *Delvecchio,* if a defendant can disrupt a trial to the point where a jury cannot be empaneled, he conceivably can never be tried.

In our opinion the remedy of binding and gagging should be used with great restraint; however, under the facts of this case we find no abuse of discretion.

For appellant's final issue on review, he claims that the trial court denied him the right to represent himself. However, nowhere in the record does it appear that appellant requested that he be permitted to represent himself. Rather, it appears that he requested that his present attorney be fired and that a new one be appointed. Appellant did not make this request until the day of trial and it appears it was made with the goal of delaying the proceedings. Therefore, this case is not controlled by *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975).

The trial court did not deny appellant's motion to discharge his attorney but took it under advisement until the next day, when appellant then presented a letter to the court in which he asked that the court not rule in his favor and that his attorney be permitted to continue to represent him. Because appellant changed his mind and desired Mr. Martin to continue as his attorney we do not feel that any error exists in Mr. Martin representing appellant at the jury selection proceedings.

The judgment and sentence are affirmed.

DONOFRIO, P. J., and FROEB, J., concurring.

2. The remedy of contempt, while appropriate if the defendant will cease his conduct, does not correct the problem of a defendant who wishes to disrupt the proceedings. Accordingly, where affirmative action is necessary, the trial court's choices are often limited to binding and gagging and removal of the defendant from the courtroom. See *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). For a general discussion of regulating the conduct of criminal defendants, see *Disorder in the Court, Report of the Association of the Bar of the City of New York, Special Committee of Courtroom Conduct* (1973).