IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

DEWAYNE ESAW,
*Appellant*.

No. 2 CA-CR 2023-0007
Filed July 23, 2024

———————————————

Appeal from the Superior Court in Pima County
No. CR20194300
The Honorable Catherine Woods, Judge

**AFFIRMED**

———————————————

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Diane Leigh Hunt, Assistant Attorney General, Tucson
*Counsel for Appellee*

James Fullin, Pima County Legal Defender
By Robb P. Holmes, Assistant Legal Defender, Tucson
*Counsel for Appellant*

## OPINION

Presiding Judge Brearcliffe authored the opinion of the Court, in which Judge Kelly concurred and Judge Eckerstrom dissented.

B R E A R C L I F F E, Presiding Judge:

¶1        Dewayne Esaw appeals from his convictions and sentences for robbery, armed robbery, kidnapping, and burglary.  He contends the trial court erred in proceeding with his trial without appointing counsel to represent him.  Because Esaw had validly invoked his right to self-representation and then voluntarily absented himself from the trial, we affirm.

**Factual and Procedural Background**

¶2        We review the facts in the light most favorable to upholding the court's ruling.  *State v. Weaver*, 244 Ariz. 101, ¶ 2 (App. 2018).  As is relevant here, in September 2019, Esaw was charged with one count of armed robbery, one count of armed robbery while using or threatening to use a simulated deadly weapon, three counts of simple robbery, four counts of kidnapping, and five counts of third-degree burglary.[1]   At his arraignment, counsel was appointed to represent him.[2]  One month later, Esaw requested new counsel, and Esaw's attorney thereafter filed a motion to withdraw citing "[i]rreconcilable difference[s]."   Thereafter, the trial court appointed new counsel for him.  Nearly two years later, Esaw's second court-appointed attorney moved to withdraw citing "significant and irreconcilable" conflict.  Esaw informed the court that he would be retaining private counsel, and he was instructed to file a notice of appearance as soon as he was able to do so.  The court noted that, as of that date and until new counsel is retained, Esaw is "self-represented."  Several months later, Esaw had yet to retain counsel, but informed the court that he

---

[1]Three of the seventeen counts in the indictment were ultimately severed for trial.

[2]Many of the facts recited herein are derived from minute entries and minute entry orders rather than from transcripts of the proceedings, which were not provided within the record on appeal.

still intended to retain private counsel; the court vacated the trial date. At a pretrial conference the following week, the court set a new trial date and another status conference to determine whether Esaw had retained new counsel or intended to represent himself at trial.

¶3            Before the next status conference, the state filed a motion reciting Esaw's history of legal representation and reported efforts to retain counsel. It asked the trial court to maintain the current trial date, but to hold a hearing and engage in a colloquy with Esaw pursuant to *Faretta v. California*, 422 U.S. 806 (1975) and *State v. McLemore*, 230 Ariz. 571 (App. 2012). On March 3, 2022, the court held such a hearing, after which it found that Esaw had knowingly, intelligently, and voluntarily waived representation by counsel and advisory counsel. Esaw executed a written waiver of his right to counsel acknowledging that he had been informed of its risks.

¶4            A trial priority hearing was held on April 28, 2022, and Esaw was not present at the hearing. The trial court nonetheless conferred with the state and set the case for trial to begin the following month. Esaw ultimately came to the court later that day, and the court informed him of the coming trial date. Esaw was, then, also absent on the first day of trial. The court proceeded with the trial in his absence noting that Esaw "who is in a self-represented capacity is not present" even though he was "informed of our jury trial starting today."

¶5            Esaw was absent for the entirety of the jury trial — at which he was convicted on all counts — and for the subsequent aggravators trial — at which the jury found several aggravating factors for each count. The trial court issued a warrant for Esaw's arrest.

¶6            Esaw was arrested in July 2022 and held in custody pending trial on the previously severed counts, a priors trial, and sentencing. The state requested appointment of advisory counsel to assist Esaw for the remaining proceedings. Esaw did not object, and the trial court appointed counsel for him.

¶7            Esaw's priors trial was held in October 2022, at which nine prior felony convictions were proved, and sentencing was set thereafter. The trial court sentenced Esaw to concurrent prison sentences, the longest of which was twenty years. Esaw appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**Discussion**

¶8        Esaw argues the trial court committed structural error in failing to appoint counsel to represent him at trial despite his self-representation and voluntary absence from trial.  He initially asserts that, although he chose to represent himself at trial by expressly waiving his right to counsel, his failure to appear at trial effectively "disrupted" the trial.  Accordingly, he claims the court should have appointed him counsel as if he had been present for the trial but excluded from the courtroom, or otherwise denied self-representation by the court, due to disruptive courtroom behavior.  In effect, he argues that, irrespective of any actual disruption, due to his mere absence as a self-represented defendant, whether his absence was voluntary or involuntary, the court was obligated to appoint him counsel to protect his constitutional rights.  The state argues that no error, structural or otherwise occurred because "Esaw expressly rejected the appointment of government-funded defense counsel *in any capacity*," including standby advisory counsel.  Moreover, even had Esaw engaged in disruptive behavior during trial while representing himself, the court would have had discretion, and was not obligated, to appoint counsel for him.

¶9        "If an appellate court finds structural error, reversal is mandated regardless of whether an objection is made below or prejudice is found."  *State v. Valverde*, 220 Ariz. 582, ¶ 10 (2009), *abrogated on other grounds by State v. Escalante*, 245 Ariz. 135, ¶¶ 15-16 (2018).  Structural error has been found in relatively few circumstances, relevant among them, where there is a "complete denial of criminal defense counsel" or "denial of access to criminal defense counsel during an overnight trial recess."  *State v. Ring*, 204 Ariz. 534, ¶ 46 (2003).[3]

¶10        A defendant's right to counsel is guaranteed by both "the Sixth Amendment to the United States Constitution and Article 2, Section 24, of the Arizona Constitution."  *State v. Penney*, 229 Ariz. 32, ¶ 10 (App. 2012); *see also Faretta*, 422 U.S. at 807.  Additionally, "[a] defendant has the right to be represented by counsel in any criminal proceeding" under our criminal rules.  Ariz. R. Crim. P. 6.1(a).

---

[3]Most recently, our supreme court concluded "that erroneous denials of the right to self-representation at sentencing constitute structural error."  *State v. Dunbar*, No. CR-23-0029-PR, ¶ 4, 2024 WL 3034973 (Ariz. June 18, 2024).

**¶11**        However, this right does not force appointment of a lawyer upon an unwilling defendant who wants to defend himself. *LaCount v. Mroz*, 253 Ariz. 49, ¶ 5 (App. 2022). In addition to the right to effective representation by counsel, the Sixth and Fourteenth Amendments to the United States Constitution guarantee the right to self-representation by implication. *Faretta*, 422 U.S. at 818, 821 (stating the Sixth Amendment "implies a right of self-representation," and Sixth Amendment rights are "part of the 'due process of law' that is guaranteed by the Fourteenth Amendment"); *McLemore*, 230 Ariz. 571, ¶ 14. The Arizona Constitution expressly guarantees "criminal defendants the right to represent themselves at trial." *State v. Cornell*, 179 Ariz. 314, 324 (1994); *State v. Martin*, 102 Ariz. 142, 144-45 (1967) (Arizona's constitution "vest[s] in a defendant the 'explicit' right to defend himself" (quoting *State v. Westbrook*, 99 Ariz. 30, 35 (1965))); Ariz. Const. art. II, § 24 ("In criminal prosecutions, the accused shall have the right to appear and defend in person.").

**¶12**        Although, as here, counsel is typically appointed by the trial court to represent a criminal defendant at the outset of the prosecution, a defendant may waive the right to counsel at any time before trial. *See State v. Lamar*, 205 Ariz. 431, ¶ 22 (2003) (a request to waive counsel must be made before empanelment of jury). To waive the right to counsel, the waiver must be "knowing, intelligent, and voluntary." Ariz. R. Crim. P. 6.1(c); *see Lamar*, 205 Ariz. 431, ¶ 22 ("To exercise this right, a defendant must voluntarily and knowingly waive his right to counsel and make an unequivocal and timely request to proceed pro se."). Courts assure themselves of a knowing, intelligent, and voluntary waiver by engaging the defendant in a colloquy pursuant to *Faretta*. *See State v. Rigsby*, 160 Ariz. 178, 182 (1989). In accord with *Faretta*, a court questions the defendant's understanding of the nature of the charges, of the dangers of self-representation, and of the possible punishment upon conviction. *See McLemore*, 230 Ariz. 571, ¶ 22. Here, the court properly conducted a *Faretta* hearing and colloquy, and Esaw does not challenge the court's finding of his valid waiver of the right to counsel.

**¶13**        Nonetheless, regardless of the nature of his legal representation, "a defendant who voluntarily absents himself from a trial may be tried, convicted and adjudged guilty in absentia," although imposition of sentence must be postponed until such time as the defendant can be present. *State v. Fettis*, 136 Ariz. 58, 59 (1983). A trial court retains discretion to proceed with trial in the absence of a defendant, and the court did so here. *Id.*; *see* Ariz. R. Crim. P. 9.1 (court can proceed in defendant's voluntary absence). Esaw does not assert on appeal that a defendant may

not be tried in absentia or that his absence from trial was anything other than voluntary. His argument is instead only that he cannot be tried in absentia without the benefit of counsel's presence and participation at trial.

## I. Disruption of Trial and Appointment of Counsel

**¶14** Esaw correctly notes that, where there has been an otherwise knowing, voluntary, and intelligent waiver of counsel, a trial court retains authority, even over the defendant's objection, to appoint counsel to represent him under certain circumstances. *See State v. Whalen*, 192 Ariz. 103, 106 (App. 1997). Such can, at a minimum, mean the appointment of advisory counsel who, though serving as an advisor and observer during the defendant's self-representation, can take over a defendant's representation when needed without delaying the proceedings. *See State v. Carter*, 1 Ariz. App. 57, 65 (1965) (advisory counsel can be appointed "to make sure of an orderly trial with as little opportunity for error as possible"). Such may also mean the complete revocation of a defendant's right to self-representation if counsel is appointed to handle the defense when a defendant has engaged in behavior that disrupts trial. *See Martin*, 102 Ariz. at 146 (court has "discretion to refuse to allow a defendant to continue his own defense if he acts in such a manner as to seriously disrupt the proceedings").

**¶15** Esaw claims that, once he failed to appear for trial, the trial court erred in proceeding with the trial without appointing him counsel because, although voluntary, his absence disrupted the trial, and he thus forfeited his right to self-representation. Although he acknowledges that appointments by the court are discretionary in the case of trial disruptions, he claims the court's failure to exercise that discretion deprived him of his constitutional rights.

**¶16** As a preliminary matter, Esaw fails to cite any authority that a defendant's mere absence at trial causes a "disruption" justifying a trial court—even in its discretion—to revoke his right of self-representation. It is generally understood that a defendant disrupts the trial by acting "in such a manner as to seriously disrupt the proceedings, either by refusing to exercise the decorum necessary to ensuring an orderly proceeding or by denying the court due respect." *Whalen*, 192 Ariz. at 107; *see also State v. Delvecchio*, 110 Ariz. 396, 400 (1974) (the defendant insisted on disobeying court rules); *State v. Jones*, 26 Ariz. App. 68, 73 (1976) (defendant ordered bound and gagged due to outbursts and refusal to obey judge's orders).

**¶17**    Esaw cites for support several Arizona cases in which a defendant's self-representation was revoked and counsel appointed for him due to disruptions.  None of these cases holds, however, that even with an active disruption, a trial court is required to appoint counsel; the reviewing court in each merely concludes that a trial court's discretionary appointment of counsel can be proper.  *See Martin*, 102 Ariz. at 146 (court has discretion to refuse to allow a defendant to continue his own defense when he seriously disrupted court proceedings); *State v. Hidalgo*, 241 Ariz. 543, ¶ 54 (2017) (court properly exercised discretion by revoking defendant's pro per status based on his refusal to proceed on scheduled trial date); *State v. Gomez*, 231 Ariz. 219, ¶¶ 15-17 (2012) (court rightly exercised discretion by revoking defendant's pro per status after his noncompliance with court rules disrupted proceedings); *Whalen*, 192 Ariz. at 108 (court did not abuse its discretion by revoking defendant's pro per status when he failed to comply with a court order to conduct defense from the front of courtroom).  And none of these cases holds that mere absence constitutes disruption.

**¶18**    We find no authority holding that *absence* of a defendant, without more, constitutes a "disruption" of a trial such that the interest of an orderly trial overcomes a defendant's right to self-representation, and we do not so conclude here for the first time.  Indeed, as a practical matter, Esaw's trial proceeded without actual disruption or delay in his absence.

## II.  Mere Absence and Appointment of Counsel

**¶19**    Given the lack of actual disruption, accepting Esaw's arguments would require us to conclude that it is structural error for a trial court not to appoint counsel for a pro se defendant who is merely voluntarily absent from trial.  Esaw cites *Faretta* in arguing that his right to counsel "endures," and, therefore, it remains a court's continuing obligation to appoint counsel to protect a defendant's interests even over his objection, when he is absent from trial, in effect, for any reason.

**¶20**    The Supreme Court in *Faretta*, although discussing the fundamental constitutional protections provided by the Sixth Amendment right to assistance of counsel, and describing it as an enduring right, clearly commands that a criminal defendant's autonomy demands that he be able to control whether another represents him.  422 U.S. at 819-21.  And, when he has knowingly, voluntarily, and intelligently made the choice to forgo representation by another, it is not the trial court's obligation to impose representation on him.  *Id.* at 819-21, 835.  "The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools

guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." *Id.* at 820. The consequence of imposing counsel on a defendant at trial, the Supreme Court held, is to invade a right more fundamental than the right to counsel:

> To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

*Id.* at 820-21 (citations omitted).

¶21 Indeed, the dissenting justices in *Faretta* exposed the dangers of not imposing counsel on an unwilling defendant, but to no avail. Justice Blackmun led the parade of horribles:

> In conclusion, I note briefly the procedural problems that, I suspect, today's decision will visit upon trial courts in the future. Although the Court indicates that a pro se defendant necessarily waives any claim he might otherwise make of ineffective assistance of counsel, . . . the opinion leaves open a host of other procedural questions. Must every defendant be advised of his right to proceed pro se? If so, when must that notice be given? Since

> the right to assistance of counsel and the right to
> self-representation are mutually exclusive, how
> is the waiver of each right to be measured? If a
> defendant has elected to exercise his right to
> proceed pro se, does he still have a
> constitutional right to assistance of standby
> counsel? How soon in the criminal proceeding
> must a defendant decide between proceeding
> by counsel or pro se? Must he be allowed to
> switch in midtrial? May a violation of the right
> to self-representation ever be harmless error?
> Must the trial court treat the pro se defendant
> differently than it would professional counsel?
> I assume that many of these questions will be
> answered with finality in due course. Many of
> them, however, such as the standards of waiver
> and the treatment of the pro se defendant, will
> haunt the trial of every defendant who elects to
> exercise his right to self-representation. The
> procedural problems spawned by an absolute
> right to self-representation will far outweigh
> whatever tactical advantage the defendant may
> feel he has gained by electing to represent
> himself.

*Id.* at 852 (Blackmun, J., dissenting). Justice Blackmun did not discuss what happens when, as here, the defendant voluntarily absents himself from trial after electing to exercise his constitutional right to represent himself and refuse any court-appointed assistance. Nonetheless, we must fall back on the Supreme Court's determination that, in forcing a defendant like Esaw "to accept against his will a state-appointed public defender, . . . courts deprive[] him of his constitutional right to conduct his own defense"; such right "is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id.* at 820, 836.

¶22 Esaw voluntarily waived his right to counsel and elected to not attend the trial. He knowingly, intelligently, and voluntarily accepted the consequences of each decision. The trial court did not deny Esaw's right to counsel and representation; he deprived himself of the right and representation. Necessarily, before there can be structural error, there must be error. *See State v. Henderson*, 210 Ariz. 561, ¶ 12 (2005). The right to represent oneself is an enduring right in itself: "Once a defendant has

waived the right to counsel, that waiver continues throughout the trial unless he clearly indicates a change of mind." *See State v. DeLuna*, 110 Ariz. at 502 (1974). Refusing to interfere with Esaw's exercise of the power recognized by both the federal and state constitutions to represent himself in the manner he chooses—here, by not putting up a defense at all—cannot be error.

**¶23** Our dissenting colleague ably argues why some further admonition of a defendant might be helpful to a defendant like Esaw (in some circumstances). But we are not persuaded that any additional admonition was needed or constitutionally required.

**¶24** It is undisputed that Esaw received the constitutionally required admonition from the trial court when he received leave to represent himself in the case without counsel. On March 3, 2022, according to the signed minute entry order following the status conference on the trial date and *Faretta* hearing, the court questioned Esaw. The order states: "The Defendant is questioned by the Court regarding his understanding of the nature of the charges, the dangers and disadvantages of self-representation, the possible punishment if convicted, his mental capacity and that he is responsible to contact and question his witnesses." The court then specifically found that "[t]he Defendant has knowingly, intelligently and voluntarily waived his right to counsel for the duration of this case, including trial before a jury." And further that "[t]he Defendant has declined advisory counsel and is granted leave to file the appropriate request for advisory counsel at a later date."

**¶25** Although we do not have a transcript from the hearing at which that admonition was given, the order reflects that it was given. Our courts have determined that a constitutionally compliant admonition regarding self-representation, which ensures that a litigant is making a knowing, voluntary, and intelligent waiver of his Sixth Amendment and state constitutional right to counsel, includes that "the defendant should first be warned of the risks of self-representation so the defendant 'knows what [the defendant] is doing and [the] choice is made with open eyes.'" *McLemore*, 230 Ariz. 571, ¶¶ 14, 22 (alterations in *Mclemore*) (quoting *Faretta*, 422 U.S. at 835); *see also State v. Dann*, 220 Ariz. 351, ¶ 24 (2009) ("A prospective pro se litigant must understand (1) the nature of the charges against him, (2) the dangers and disadvantages of self-representation, and (3) the possible punishment upon conviction.").

**¶26** Esaw did not request that a transcript of the March 3, proceedings be included in the record on appeal. *See* Ariz. R. Crim. P.

31.8(b)(2)(A)(i) (within thirty days of "filing a notice of appeal, the appellant may request . . . a certified transcript of any proceeding not automatically included under (b)(1)").  We must presume, without a transcript, that the trial court's colloquy with Esaw was satisfactory.  *See State v. Rivera*, 168 Ariz. 102, 103 (App. 1990) (defendant controls "what the record on appeal will contain"; defendant's duty to prepare record in manner enabling reviewing court to assess issues on appeal; "missing portion of the record will be presumed to support the decision of the trial court").  Nonetheless, the court also noted in its order that Esaw signed "the Waiver of Right to Lawyer in open Court this date."  That written waiver is in the record and expresses the following, after listing the charges and potential punishments Esaw faced:

> I understand I have the right to have a lawyer's help before trial, at the trial itself and during sentencing if I am found guilty.  I understand that, if I am unable to hire a lawyer, one will be provided at little or no expense to me.
>
> I understand a lawyer can be of great value in determining whether the procedures used in investigating the charges and obtaining evidence against me, including any confession I may have made, were lawful; whether an act I may have committed actually amounts to the crime of which I am charged; whether I have any other valid defense to the charges; and, if I am found guilty, whether I should be placed on probation, be required to pay a fine or be sentenced to prison.
>
> I understand I can change my mind about having a lawyer at any time by asking the judge to give me a lawyer, but that I will not be entitled to repeat any part of the case already held without a Lawyer.

And finally,

> After reading and understanding the above, I hereby give up my right to a lawyer in this case.

¶27        In addition to the admonitions pertaining to self-representation above, we must also conclude that the trial court offered sufficient notices to Esaw which allowed it to infer that Esaw waived his right to be present at trial. *See State v. Reed*, 196 Ariz. 37, ¶ 3 (App. 1999) (Sixth Amendment guarantees right to be present at trial; waiver of right to be present may be inferred pursuant to Rule 9.1.). A court may "infer that a defendant's absence is voluntary" if the defendant had "actual notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward in the defendant's absence." Ariz. R. Crim. P. 9.1. As further stated in the court's order, after affirming and providing the date of the jury trial, as well as the start time, duration, and location of the trial, and providing the date and location of the trial priority hearing to be held in advance of trial, the court stated: "The Defendant is admonished regarding the trial date and the consequences should he fail to appear."

¶28        Although the order does not reflect precisely the admonition on the risks of any failure to appear, its constitutional compliance is not disputed. Again, we do not have a transcript, and therefore we must presume, at a minimum, that the trial court complied with Rule 9.1 in providing a compliant admonition. *State v. Villalobos*, 114 Ariz. 392, 394 (1977) ("[W]hen an incomplete record is presented to an appellate court, it must assume that any testimony or evidence not included supported the action taken by the trial court."). And that same principle requires that we presume whatever would be revealed by the transcript would support the court's inherent conclusion that Esaw made a sufficiently knowing, intelligent and voluntary waiver of his right to be present and have counsel at trial. *See id.*; *Rivera*, 168 Ariz. at 103. The fact that we may presume such things makes this case ill-suited to establishing some new prophylactic admonition.

¶29        Consequently, by virtue of the two admonitions that Esaw undisputedly received—on the same day, directly from the trial court, and, in part, as acknowledged in a signed writing— the court properly warned Esaw of the consequences of missing trial. He was told, in sum, at least the following: if he did not appear at trial, trial would go on without him; he would not have a lawyer, even advisory counsel, before, during or after trial, unless he filed a request for one or at a minimum asked the judge for a lawyer; and that such help, if he had it, would be valuable in contesting the charges against him and presenting his defenses. It is hard to imagine what more the court could have done to inform Esaw both of the consequences of not having a lawyer, and then of not appearing at trial—

and thereby not having any representation at trial that could go on without him. If nothing else, common sense would have warned him of the risks of his actions, even had the court not done so expressly.

¶30 Our dissenting colleague surmises that Esaw could have reasonably expected that trial would *not* go on without him, that the trial court would instead appoint a lawyer for him without his asking, or that something else providentially would occur, but not that the trial would go on without Esaw and therefore without his "lawyer." Our colleague does not tell us precisely why Esaw would reasonably have had any of those assumptions given he had been expressly told otherwise by the court.

¶31 Our courts warn defendants of the dangers and risks of self-representation and the benefits of trained counsel that they surrender by acting in pro per, and courts warn defendants of the risk of failing to appear at their court proceedings, including at trial. Our dissenting colleague would enlarge the obligations assumed by the trial court to include a new admonition. A new admonition stitched together from those two otherwise clear and constitutionally compliant admonitions, just so the defendant knows *exactly* what might happen if he self-represents and then absconds— that is, not just if he does *this*, and not just if he does *that*, but if he does both *this <u>and</u> then that*. We do not believe any such cobbling together of two admonitions into a new, combined (and therefore redundant) admonition is constitutionally required. It certainly was not required at the time Esaw both waived counsel, electing to represent himself at trial without any help from a lawyer, and then made the affirmative decision not to appear for that trial.

### Disposition

¶32 We affirm Esaw's convictions and sentences.

E C K E R S T R O M, Judge, dissenting:

¶33 The United States and Arizona constitutions expressly guarantee the accused a fair trial. *State v. Bible*, 175 Ariz. 549, 567 (1993). In our system of justice, a fair trial includes: (1) an opportunity for defendants to present their own version of the facts, including the right to compulsory process, and (2) the right to the confront the witnesses against them, including the right to cross-examine those witnesses. *See* U.S. Const. amends. V, VI; Ariz. Const. art. II, §§ 4, 24.

¶34         These rights are not garnish to a constitutionally compliant fair trial.  They are its main course.  As the United States Supreme Court has long and steadfastly held, a defendant's right to be "heard in his defense" and "to examine the witnesses against him" are "basic in our system of jurisprudence."  *Pointer v. Texas*, 380 U.S. 400, 405 (1965) (quoting *In re Oliver*, 333 U.S. 257, 273 (1948)).  In our adversarial system, those rights are the indispensable engines of a fact-finding process designed to secure accurate results.  *See Maryland v. Craig*, 497 U.S. 836, 846 (1990) ("rigorous adversarial testing" "the norm of Anglo-American criminal proceedings"); *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (cross-examination the principle means by which truth of testimony tested); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (diminution of right to confront and cross-examine witnesses calls into question "ultimate 'integrity of the fact-finding process'" (quoting *Berger v. California*, 393 U.S. 314, 315 (1969))).

¶35         Assuming a trial court should ever proceed with a criminal trial stripped of these defining features, it may do so only when the accused has expressly waived those features and when doing so is necessary to protect the state's competing interest in a prompt trial.  Because neither circumstance occurred on the record before us, I would reverse Esaw's convictions and remand for a new trial.

¶36         Certainly, criminal defendants may waive rights fundamental to a fair trial.  *See, e.g.*, *Faretta v. California*, 422 U.S. 806 (1966) (waiver of right to assistance of counsel); *State v. Muhammed,* 253 Ariz. 371, ¶¶ 21-22 (2022) (waiver of right to jury).  By pleading guilty, the accused may even waive the right to a trial altogether.  *See Boykin v. Alabama,* 395 U.S. 238, 242 (1969); Ariz. R. Crim. P. 17.

¶37         As the majority correctly observes, Esaw does not dispute that he validly waived his right to presence at trial.  Nor does he dispute that he asserted his constitutional right to self-representation:  an event that necessarily included an express waiver of his right to appointed counsel. But the state cannot assert, nor does the record support, that Esaw, by either of those waivers, knowingly, intelligently, and voluntarily waived his right to confront and cross-examine the witnesses against him or his right to advocate his version of the case to the jury.

¶38         Neither of his valid waivers, when considered in isolation, even implies an intention to forego such rights.  Self-represented defendants presumptively retain the right to confront and cross-examine their accusers and make their case to the jury.  And, nothing inherent in a defendant's failure to appear at trial disables counsel from exercising these

rights on the defendant's behalf. For this reason, neither of the traditional advisories necessary to find waiver of the right to appointed counsel, or waiver of the right to presence at trial, contain any language alerting a defendant that those waivers might also include wholesale forfeiture of the right to challenge the state's case.

¶39　　　Nor was Esaw advised that the *combined* effect of his self-represented status and his failure to appear for trial would result in such a profound forfeiture. And, although he was repeatedly advised that a trial could proceed in his absence if he failed to appear, those advisories never suggested that such a trial would not include its core features.

¶40　　　Thus, any coherent waiver claim must depend on the implication of the two sets of valid waivers considered together. As my colleagues reason: Should not the defendant have expected that trial would proceed in his absence after he was expressly told it could proceed in his absence? And, if the accused waived his right to be present while self-represented, does not that waiver necessarily imply that the trial would proceed with the defendant unrepresented? In turn, if the defendant had no representation at trial, does not that necessarily imply that he knowingly forfeited both his right to cross-examine the state's witnesses and his right to present his own theory of the case?

¶41　　　Although impeccably logical at every step, this reasoning overlooks that, under our settled jurisprudence and long-standing rules of criminal procedure, our courts do not accept waivers of substantial constitutional rights *by implication*—much less, as here, implications built upon implications. Rather, we must "indulge every reasonable presumption against the loss of constitutional rights." *Illinois v. Allen*, 397 U.S. 337, 343 (1970). And, it is settled law that waivers of core constitutional rights must be express, not implied. *Barker v. Wingo*, 407 U.S. 514, 525-26 (1972) (presuming waiver from silence or acquiescence impermissible); *State v. Avila*, 127 Ariz. 21, 24-25 (1980) (knowing, voluntary, and intelligent surrender of constitutional rights "will not be presumed from a silent record"). Further, waiver must occur in a fashion that demonstrates the pertinent rights have been forgone knowingly, intelligently, and voluntarily. *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938) (*overruled on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981)); *Avila*, 127 Ariz. at 25. The state bears the burden of affirmatively demonstrating that such waivers have occurred. *Barker*, 407 U.S. 529 (state bears "entire responsibility" to show waiver of substantial constitutional rights).

**¶42**        In every procedural context in which defendants seek to waive fundamental trial rights, our criminal rules require the trial court to personally advise them of the substance of the trial rights they seek to forego.  After doing so, a court may find waiver only if it determines that the accused has made a knowing, voluntary, and intelligent decision.  *See* Ariz. R. Crim. P. 17.2-17.3 (setting forth trial court's duties to effectuate defendant's waiver of trial to accept guilty plea); Ariz. R. Crim. P. 17.7(a)-(b) (setting forth requirements before "submitting a case on the record"); Ariz. R. Crim. P. 18.1(b) (setting forth requirements for waiving jury before proceeding with bench trial).  Our rules do not represent procedural surplus.  Rather, they enforce settled constitutional preconditions for the waiver of such rights.  *See Boykin*, 395 U.S. at 242 (articulating requirements for constitutionally compliant change of plea); *Avila*, 127 Ariz. at 25 (requirements for constitutionally compliant submission on the record); *State v. Conroy,* 168 Ariz. 373, 376 (1991) (requirements for constitutionally compliant waiver of jury trial).

**¶43**        Relevant here, those steps are required even when the logical *implication* of the defendant's conduct would suggest that a defendant's waiver is knowing, voluntary, and intelligent.  As noted, our jurisprudence and rules require that defendants be told of the specific trial rights they forego by pleading guilty—even when their decision to plead guilty plainly implies that a trial would no longer be necessary to ascertain their guilt. When defendants seek to have their guilt or innocence determined at a bench trial, our jurisprudence and rules require that they be expressly advised that they are foregoing their right to have a jury make that determination.  This requirement persists even if a defendant is present when his counsel asks for and schedules a bench trial—events which imply both the defendant's awareness that a jury will not decide his guilt and his voluntary acquiescence to that fact.  *See State v. Baker,* 217 Ariz. 118, ¶¶ 10-13 (App. 2007) (rejecting state's argument that defendant demonstrated knowing, voluntary, intelligent waiver of jury trial by presence at several hearings, including original trial date, at which defense counsel agreed to, and planned in open court for, submission of case on the record).

**¶44**        The state contends that Esaw's post-trial failure to complain about the trial process, and his post-trial retention of his self-represented status, demonstrate that he expected the trial would occur precisely as it did.  But we have specifically rejected this species of reasoning to demonstrate constitutional waiver.  *See id.* ¶ 18 (rejecting relevance of post-event acquiescence in assessing pre-event waiver).  To find on the record before us that Esaw comprehensively waived his right to test and

16

rebut the evidence against him, we are instead left to speculate about the defendant's knowledge of the mechanics of how a trial would proceed in his absence.[4] That is a far cry from what our guiding constitutional jurisprudence and procedural rules require to find a waiver.

¶45 The requirements of Rule 17.7 for submitting a case on the record are especially instructive here. That process—through which the parties permit the court to assesses guilt or innocence without the confrontation of adverse witnesses, without the defendant's potential testimony on his own behalf, and without the argument or advocacy of counsel—bears a striking resemblance to the trial that actually occurred in the instant case.[5] Before such a streamlined fact-finding may occur, our rules expressly require the trial court to "address the defendant personally," inform the defendant with specificity of the trial rights necessarily forfeited, and determine whether the defendant has waived them "voluntarily and intelligently." *See id.* Notably, the rule contemplates that a defendant must be specifically informed of the right to confront and cross-examine witnesses and the right to present his own case—the very rights Esaw lost when the trial proceeded in his absence. *See* Ariz. R. Crim. P. 17.7(a)(3) (incorporating specific requirements for advising defendants

---

[4]In finding waiver by implication on the record here, my colleagues overlook that Esaw, untrained in the law, might have made varying, practical assumptions about the effects of his non-appearance at trial. *See Wheat v. United States*, 486 U.S. 153, 158 (1988) (observing that an "unaided layman" may lack knowledge of "intricate" criminal procedures). Esaw could have assumed that a criminal trial in an adversarial system could not practically occur in the absence of both the defendant and defense counsel—and that a warrant would therefore be issued for his arrest in lieu of a trial. Indeed, Esaw knew his trial date had been repeatedly postponed precisely because he had failed to retain counsel. Or, Esaw could have assumed that, if he failed to appear, his right to self-representation would be revoked, with his trial proceeding in his absence with court-appointed counsel taking up his defense. Far from implausible, these were both options the trial court actually possessed.

[5]From the standpoint of advocacy, it differs in one meaningful respect. When the parties agree to submit a case on the record, both parties necessarily forego the right and procedural opportunity to engage in court advocacy and persuasion. During the trial at bar, only the defendant was unable to exercise those rights. This led to a profound asymmetry at odds with our adversarial system.

of trial rights pursuant to Rule 17.2 for change of plea advisory); *Avila*, 127 Ariz. at 24-25 (before defendant may waive traditional trial rights and submit case on the record, defendant must be specifically warned of constitutional rights he foregoes, specifically including right to representation at trial, right to confront witnesses against him, and right to present his own case).

¶46        In short, our state's procedural rules, and the constitutional protections that underlie them, require express, in-person waivers of fundamental constitutional rights related to a fair trial. But, even assuming the accused could also forfeit the particular constitutional rights at issue here by conduct alone, such waivers may only be found when the accused has been previously and expressly warned. *See State v. Brearcliffe*, 254 Ariz. 579, ¶¶ 15-16 (2023) (requiring on-the-record advisory that failure to appear at sentencing would result in waiver of right to appeal pursuant to A.R.S. § 13-4033(C) and recognizing that requirement as a "constitutional guarantee"); *State v. Armenta*, 112 Ariz. 352, 353 (1975) ("In order to find a waiver it must be shown that the defendant had personal notice of the proceeding, that he was aware that he had a right to attend and that he had been informed that the proceeding would go forward in his absence should he fail to appear."); *see also* Ariz. R. Crim. P. 9.1 (requiring defendant receive "actual notice of the date and time of the proceeding, notice of the right to be present" and that "proceeding would go forward in the defendant's absence" before waiver by non-appearance presumed); *Allen*, 397 U.S. at 343-44 (defendant can forfeit right to presence at trial by disruptive conduct only if previously warned that continuation of disruptive conduct will result in removal). Because Esaw was neither personally advised nor otherwise warned that his failure to appear while self-represented would also forfeit his core trial rights, I would hold that the trial court erred by proceeding with his trial when he lacked any representation at all.

¶47        By the same token, our legal system cannot reward defendants for violating their promises to appear for trial. By doing so while self-represented, Esaw necessarily disrupted the orderly commencement of a constitutionally compliant trial. His misbehavior threatened the state's entitlement to a prompt and accurate resolution of Esaw's culpability.

¶48        Recognizing the procedural hazards posed by the uncounseled behavior of self-represented defendants, our jurisprudence has equipped our trial courts with a tool to manage those hazards. In the very opinion by which the United States Supreme Court held that criminal

defendants enjoy a constitutional right to self-representation, it emphasized that the right may be terminated if the defendant misbehaves. *Faretta*, 422 U.S. 806, n.46. It suggested that a defendant's dignitary insults to courtroom procedure, or failure to comply with relevant rules of procedural law, would justify that termination. *Id.* ("The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.").

¶49 Thus, the trial court here possessed a tool to manage Esaw's failure to appear as old as the right of self-representation itself. In conformity with *Faretta*, the court had the authority to: (1) find that Esaw had forfeited his right to self-representation by failing to appear, (2) appoint counsel to represent him, and (3) order a short delay in trial proceedings to provide counsel time to acquaint himself with the case file.[6] *See State v. Gomez*, 231 Ariz. 219, ¶¶ 13, 15, 17 (2012) (affirming trial court when it applied this three-step remedy).

¶50 The state contends, and the majority's reasoning suggests, that in deploying this remedy, the trial court would have violated Esaw's right to self-representation. But, as our own supreme court has repeatedly held in conformity with *Faretta*, our trial courts possess the authority to revoke a defendant's right to self-representation "if a defendant fails to comply with court rules or orders." *State v. Hidalgo*, 241 Ariz. 543, ¶¶ 44, 56 (2017) (revocation of self-representation permissible if "defendant is not willing to proceed on the scheduled trial date"); *see also State v. Whalen*, 192 Ariz. 103, 106 (App. 1997) (defendant entitled to self-represent "only so long as the defendant 'is able and willing to abide by the rules of procedure and courtroom protocol'" (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984))). In those cases, the trial court revoked defendants' self-represented status not because they had engaged in disruptive courtroom behavior, but rather because they had failed to take the necessary steps outside the courtroom to adequately prepare for a reasonably prompt trial. *Hidalgo*, 241 Ariz. 543, ¶¶ 44-56; *Gomez*, 231 Ariz. 219, ¶¶ 9-17. For example, in rejecting Gomez's claim that his right to self-representation had been improperly revoked, our supreme court tersely concluded: "[A] defendant who proves himself incapable of abiding by the most basic rules of court is

[6]The trial court could also have issued a warrant for Esaw's arrest and continued the trial until his apprehension. *See* Ariz. R. Crim. P. Form 6. But when Esaw failed to appear, the case had already been substantially delayed, and the victims had an interest in a prompt resolution of the case.

not entitled to defend himself." *Gomez*, 231 Ariz. 219, ¶ 15 (alteration in *Gomez*) (quoting *Deck v. Missouri*, 544 U.S. 622, 656 (2005) (Thomas, J., dissenting)).

¶51 The requirement that criminal defendants appear for trial, and have representation of some kind, are two of the most basic rules of court. Our trial courts routinely order out-of-custody defendants to appear for all court proceedings unless excused therefrom. *See* Ariz. R. Crim. P. Form 6 (supreme court's recommended release form ordering defendant to "attend all future court hearings" and warning that failure to appear at trial or any hearing may result in arrest warrant). Our courts also issue orders — and conduct hearings — to assure that each defendant has representation at trial — whether appointed, retained, or by self-representation.[7] *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) (assistance of counsel "is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty" (quoting *Zerbst*, 304 U.S. at 462)). These orders enforce basic procedural norms without which our criminal justice system could not practically function in a manner consistent with our Constitution.

¶52 By violating both rules, without having waived important trial rights, Esaw obstructed the trial court's ability to conduct a prompt, constitutionally compliant trial. By failing to revoke Esaw's self-represented status on that basis, the court allowed Esaw's misbehavior to profoundly degrade a fact-finding process designed to serve the interests of both the defendant and state.[8]

---

[7] Such hearings occurred here repeatedly.

[8] Both the trial court and the state possess an interest in a trial that includes adversarial testing of its evidence and complies with the traditional norms for due process. *See Mayberry v. Pennsylvania*, 400 U.S. 455, 468 (1971) (Burger, C.J., concurring) ("A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself."); *Singer v. United States*, 380 U.S. 24, 36 (1965) (recognizing government's "legitimate interest" in ensuring cases tried in manner "most likely to produce a fair result," including by compelling jury trial against defendant's wishes); *Berger v. United States*, 295 U.S. 78, 88 (1935) (government's interest in a criminal prosecution "is not that it shall

**¶53**        The resulting trial bore none of the hallmarks of an adversarial event conducted in conformity with due process. Lacking any representation at all, the defense challenged no jurors for cause and conducted no voir dire. It presented no opening statement. It conducted no cross-examination, made no objections to the prosecutor's direct examination or admission of evidence, made no motion for judgment of acquittal, presented no witnesses of its own, neither offered nor objected to any jury instructions, and presented no summation. Although the majority observes that this trial proceeded without "disruption or delay," it is difficult to conjure an event in which the intended adversarial process could be more disrupted—or the even-handed dignity of an American courtroom, where the state and defendant stand as equal parties, more offended. *See Davis v. Grant*, 532 F.3d 132, 143 (2d Cir. 2008) (alterations in *Davis*) ("If no counsel is appointed to represent an absented *pro se* defendant, there is a real danger that the ensuing lack of 'rigorous adversarial testing that is the norm of Anglo-American criminal proceedings' will undermine 'the accuracy of the truth-determining process' by eliminating 'the trier of fac[t']s . . . basis for evaluating the truth of the [testimony].'" (citations omitted)). We have affirmed a trial court's revocation of self-represented status for far more modest disruptions of courtroom protocol. *See Whalen*, 192 Ariz. at 106, 108 (affirming revocation based on defendant's insistence on conducting his defense from "behind the bar").

**¶54**        The state nonetheless contends that any revocation of Esaw's right to self-representation under the circumstances here would have obstructed Esaw's right to present a defense of non-participation. My colleagues' reasoning likewise speculates that, by not appearing, Esaw strategically chose to present no defense at all. But our record is silent on Esaw's pretrial motivations in failing to attend trial—or Esaw's expectations of how the trial court would manage his failure to appear. In my view, we should be especially reluctant to adopt such speculation when it stands so at odds with any logical strategy in Esaw's interests.[9]

---

win a case, but that justice shall be done"), *overruled on other grounds by Stirone v. United States*, 361 U.S. 212 (1960).

[9]During oral argument, the state more plausibly posited that Esaw might have personally failed to appear to make in-court identification more difficult for the victims. Given the numerous prior delays occasioned by Esaw's persistently unsuccessful search for retained counsel, one might also speculate that he failed to appear assuming it would further delay his case.

¶55      Acknowledging, as it must, that Arizona courts have repeatedly upheld our trial courts when they have revoked self-represented status, the majority emphasizes that none of those cases hold that a trial court *must* revoke that status. This overlooks that a trial court's discretion is not unlimited—even when managing misbehaving defendants. In exercising its discretion, a trial court must conform to the requirements of our procedural rules and the constitutional imperatives that animate them. Esaw's disruptive conduct—in failing to appear for trial while self-represented and without having waived important trial rights— presented the court with a unique procedural challenge that required a procedural remedy. As described above, it had two constitutionally compliant options, only one of which would have practically honored the state's interest in a prompt trial. Instead, it proceeded with a trial that violated long-settled requirements for the waiver of substantial constitutional rights. In doing so, it erred.

¶56      In this case, Esaw willfully violated the orders of the trial court in failing to appear for his trial. That misbehavior cannot be tolerated or rewarded. Fortunately, our courts have ample other remedies to sanction such misconduct that do not violate constitutional standards. They may issue warrants for the arrest of non-appearing defendants—and revoke their release status once apprehended. If the defendant is convicted, the court may consider the defendant's record of violating court orders in determining the length of sentence and whether the defendant is amenable for probation. We should be reluctant to grant a defendant so misbehaving with a new trial—something the trial court's error regrettably requires. But, our courts should be far more reluctant to allow a misbehaving criminal defendant to so distort the function and dignity of a trial in an Arizona courtroom.

---

But the state has not explained why he would also strategically choose to proceed at trial without any representation at all. Under that circumstance, far from presenting a misidentification defense, he could present no defense or argument of any kind.